MARTHA C. DANN *vs.* LOUISE H. CANFIELD.

Suffolk.    November 19, 1907. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Devise and Legacy,* Residuary clause.    *Words,* " Residuary legatee."

A testator who was advanced in years and had no wife and no children of his own, but two adopted daughters, L. and M., both of whom were married, personally wrote his will upon a printed form. His relations with L. were most cordial, but with M. they were not cordial. The will contained numerous specific bequests of money, a specific devise of a pasture and of his homestead property, and provisions for the creation of a trust fund of $50,000 with detailed directions for the payment of the income and portions of the principal to various persons. L. and her children were given the benefit of $30,000 of the trust fund, and M. and her children of $5,000. Six of the nine clauses of the paragraph relating to the trust fund contained directions that, in certain contingencies, "this portion shall revert to my General Estate." The last paragraph of the will read as follows: " I hereby name and constitute my adopted daughter L. as my residuary legatee — the amount to remain as a trust fund during her lifetime — the income payable to her quarterly." It did not appear that the testator was a lawyer or had had any special instruction as to the technical meaning of the terms he used. *Held,* that it was the intention of the testator that real as well as personal estate should pass to the person named as "residuary legatee."

PETITION filed in the Superior Court for the county of Suffolk September 18, 1906, for partition of fourteen parcels of land in Rockport and one in Boston. The land formerly belonged to one Leander Miller Haskins. The petitioner and the respondent were adopted daughters of his and were his only heirs at law. Haskins left a will, but the petitioner contended that he died intestate as to the land described in the petition, while the respondent contended that that land passed by the residuary clause of his will.

The case was tried upon agreed facts before *Wait,* J., without a jury. The will of Haskins was written by himself upon a printed form. The first clause created a trust fund of $65,000

to continue for fifteen years. Clause "A" of this paragraph provided that the respondent and her children should receive the income of $25,000 of the trust fund, and eventually that amount of the principal. Clause "B" made a like provision for the benefit of the petitioner and her children with regard to $5,000 of the trust fund. Clause "C" provided for the payment of the income of $5,000 of the trust fund to a sister for her life, and closed with "At her death this portion shall revert to my General Estate." Clause "D" provided for the payment of the income from $10,000 of the trust fund to a brother, and "in the event of his death before distribution, the income of $5,000 shall be paid to his widow if she survive and the remaining $5,000 shall revert to my General Estate. In the event of the death of both . . . this whole portion shall revert to my General Estate." By clause "E" a nephew was given the benefit of $5,000 of the trust fund, and the clause closed with "In the event of his death before distribution this portion to revert to my General Estate." Clause "F" gave a sister in law the benefit of $2,000 of the trust fund and closed "At her death this portion to revert to my General Estate." Clause "G" gave a cousin the enjoyment for life of the income from $5,000 of the trust fund, and closed, "At his death this portion shall revert to my General Estate," and clause "H," containing a direction to pay the income from $5,000, and eventually that part of the principal of the trust fund to a son of the respondent, closed "In the event of death before distribution this portion to revert to my General Estate." Clause "J" gave as public bequests the income of $3,000, and eventually that portion of the principal.

The second, third and fourth paragraphs of the will made various pecuniary bequests. The fifth and sixth paragraphs are described in the opinion, where all other material facts are stated.

The judge found for the respondent and dismissed the petition; and the petitioner alleged exceptions.

*C. H. Sprague,* for the petitioner.

*J. L. Bates,* (*F. N. Nay* with him,) for the respondent.

HAMMOND, J. The only question is whether under the will of Leander Miller Haskins the real estate of which partition is

sought in this suit passed to the respondent. And this question turns upon the meaning to be given to the term "residuary legatee" in the last clause of the will.

There can be no doubt that "an appointment of a residuary legatee standing alone in a will would be a gift of the personal estate only. That is settled by authority." Jessel, M. R., in *Hughes* v. *Pritchard*, 6 Ch. D. 24, 27. See also *Windus* v. *Windus*, 6 DeG., M. & G. 549 ; *In re Methuen & Blore's Contract*, 16 Ch. D. 696, and cases there cited; *Gethin* v. *Allen*, 23 L. R. (Ir.) 236, and cases cited. But there can be no doubt also that persons not well educated, or at least not well instructed in law, frequently use the term "legatee" as designating a person who by virtue of the gift is to take land as well as personalty, and that in common parlance the term implies any person who receives a benefit under a will. Indeed, as said by Cranworth, Lord Chancellor, in *Windus* v. *Windus*, *ubi supra*, "there is no magic in the words [residuary legatee] themselves." Hence courts in construing the term look at the whole of the will, or in other words at the context, for the purpose of getting at the real meaning of the testator. The fact that the will disposes specifically of any real estate is a circumstance of considerable weight, especially when considered in connection with any language in the will, at the beginning or elsewhere, indicating an intention to dispose of the testator's whole estate, or indicating that the real and personal estate constitute a common fund. *Pitman* v. *Stevens*, 15 East, 505. *Davenport* v. *Coltman*, 9 M. & W. 481. *Evans* v. *Crosbie*, 15 Sim. 600. *Laing* v. *Barbour*, 119 Mass. 523. A good illustration of the subtle distinctions upon which the decision whether the residuary legatee takes the real as well as the personal estate depends is found in the two cases of *Hughes* v. *Pritchard*, 6 Ch. D. 24, 27, and *In re Methuen & Blore's Contract*, 16 Ch. D. 696, the opinions in both of which cases are given by Jessel, M. R. In one it is held that real estate passed to the legatee, and in the other that it did not. See also *Martin* v. *Harding*, [1907] 1 Ch. 465.

It becomes necessary to look into this will and the circumstances under which it was made. The testator was evidently somewhat advanced in years. He had no wife, and his only heirs at law were the petitioner and the respondent, each an

adopted daughter. The relations between the testator and the petitioner had not been cordial for more than twenty years, and for that time there had been no communication between them. "She had not visited him nor had he visited her." The relations between the testator and the respondent had continued most cordial to the time of his death. She and her family spent their summers with him at his home in Rockport in this State, and he often visited her at her home in New Jersey.

He was possessed of considerable property: his personal estate amounting to about $140,000, and the real estate consisting of his homestead with thirty acres of land, also the " Ox Pasture " of forty acres, also the land involved in this suit, the last being of the estimated value of $25,000.

Thus situated the testator decides to make his will. It does not appear that he was a lawyer, or that he had had any special instruction as to the technical meaning of the terms he was about to use. He takes a printed blank form and unaided goes to work. After providing for the payment of his debts, he first creates a trust fund of $65,000 for the benefit of his two adopted daughters (who share unequally however) and other persons therein named. He then makes several other bequests of personal property. Then comes the following: " 5th my residence and accompanying buildings and the lot of land on which said buildings are located about thirty acres, also the lot of land known as the Ox Pasture of about forty acres, all to be offered to the Town of Rockport for hospital and Park purposes." " After all of the above " comes (6th) a bequest of a fund of $10,000 for " worthy, indigent students." He then bequeaths his clothing to his brother Joseph, and his furniture and jewelry to his " daughter Louise," the respondent.

The last clause is as follows : " I hereby name and constitute my adopted daughter Louise Haskins Canfield as my residuary legatee — the amount to remain as a trust fund during her lifetime — the income payable to her quarterly."

What did he mean by " residuary legatee "? Did he intend that the residuary legatee should take only the residue of the personal estate, or that she should take that of the real estate as well? On the one hand it is argued that there is a presumption that a testator intends to dispose of his whole estate, that a partial

intestacy is not to be presumed; on the other hand it is argued that, *prima facie*, by the term "residuary legatee," only personal property passes to the person designated.

It is to be observed in the first place that the testator, being possessed of both real and personal estate, does not confine himself to the disposition of his personal estate. He is thinking of his real estate also and he specifically disposes of a substantial part of it. It is not necessary to decide whether that is of itself enough to show that when he used the term "residuary" he included the rest of his real estate as well as his personal estate, for we are of opinion that while the testator does not expressly state his intention to dispose of all his estate, as in *Laing* v. *Barbour*, 119 Mass. 523, still there is enough in the will, when taken in connection with the express devise of a part of his real estate, to show that he intended the remainder of his real estate to pass to the residuary legatee. By the express language of the will, certain portions of the first trust fund created are upon the death of the life beneficiaries to revert to "my general estate." By this term he must have meant all this estate not specifically devised. He had in his mind not only the undevised personal estate, but also the undevised real estate. He evidently regarded his general estate, both real and personal, as one common fund. In his mind it was all one estate.

The question is not free from difficulty, but, in view of the considerations above named, the fact that the testator was a layman and the evident care and thoroughness with which he proceeded to dispose of his property, we are of opinion that his intention when he wrote the last paragraph was that the real as well as the personal estate should pass to the residuary legatee. It was all "general estate," and was all to go the same way.

*Exceptions overruled.*