Argued January 14, affirmed February 24, rehearing denied June 2, 1925.

EDITH W. STUBBS v. W. H. ABEL ET AL.

(233 Pac. 852; 236 Pac. 505.)

Wills—Court will not Assume That Testator Intended to Disinherit Any Heir.

1. In interpreting a will, court will not assume that testator intended to disinherit any heir.

Wills—Object in Construing Will is to Ascertain Expressed Intention of Testator.

2. In view of Section 10124, Or. L., the object in construing a will is to ascertain expressed intention or meaning of testator.

---

1.   See 28 R. C. L. 80.
2.   Construction of will generally, see note in 2 L. R. A. (N. S.) 443.   See, also, 28 R. C. L. 211.

**Wills—When Will Susceptible of Conflicting Interpretations, Parol Evidence of Surrounding Circumstances and Intention of Testator Admissible.**

3.  In view of Sections 713, 717, Or. L., when a will is susceptible of conflicting interpretations, circumstances surrounding its execution and intention and object of testator may be ascertained by parol evidence and instrument enforced in accord with such intention.

**Wills—In Construing Will Court will Occupy Position of Testator.**

4.  In construing a will, court will occupy, so far as possible, position of testator, in order to think as he thought and understand as he understood.

**Wills—Court will not Resort to Surrounding Circumstances When Will Unambiguous.**

5.  Where a will contains no ambiguity, court will not resort to surrounding circumstances to import into will an intention not therein expressed.

**Wills—"Devise," and "Bequeath," Distinguished—"Legacy."**

6.  In the law of wills, "devise" is properly used of realty, "bequeath" is used of personalty, and "legacy" as a gift of money or other personal property.

**Wills—"Residuary Legacy" Defined.**

7.  A "residuary legacy" is a bequest by will of all testator's personal estate not otherwise effectively disposed of by that document.

**Wills—"Portion" is Share Falling to Child from Parent or Person Similarly Related.**

8.  A "portion," as used in law of wills, is share falling to child from parent's estate or from estate of any person bearing similar relationship.

**Wills—Provision for Survivorship Held to Pass Both Realty and Personalty on Death of Either Beneficiary of Trust—"Residuary Estate"—"Residuary Legacy"—"Devise"—"Bequeath"— "Legacy"—"Portion"—"Delivered"—"Received."**

9.  Where testator devised and bequeathed one half of residue to a daughter, and one half in trust to two grandsons until they attained the age of thirty years, and provided that portion of any beneficiary who encouraged litigation against estate should be turned into "residuary estate," and that on death of either grandson before receiving "legacy," "such portion" should go to surviving brother, and should both die, such legacies were to be part of "residuary legacy," *held* that in view of testator's evident intent, and construction by beneficiaries, the term "residuary estate" and "residuary legacy" were used synonymously, as were words "de-

3.  See 28 R. C. L. 268, 270.
5.  See 28 R. C. L. 273.
6.  See 28 R. C. L. 289.
7.  See 28 R. C. L. 296.

vise," "bequeath," "legacy," and "portion"; "such portion" referring back to "legacy," and "legacy" and "portion" being used interchangeably, and on death of one grandson, his share of both realty and personalty passed to survivor, since possession of real property as well as personalty may be "delivered" and "received."

**Wills—Beneficiary Held Only to have Acquired a Qualified or Determinable Fee in Testator's Real Property.**

10. Where testator devised and bequeathed one half of his residuary estate to two grandsons, "subject, however to such disposition as I may hereinafter make," and thereafter provided that their interests were to be held in trust until they attained age of thirty years, and that on death of either grandson before receiving his portion, it should go to surviving brother, and should both die, such legacies were to be part of residuary legacy, *held* that, in view of Section 10121, Or. L., such grandsons had only a qualified or determinable fee in the real property until they arrived at age of thirty years.

**Wills—"Base," "Qualified," or "Determinable Fees" Defined.**

11. A "base," "qualified" or "determinable fee" is created by devise in fee, coupled with provision that, upon the happening of a certain contingency, estate so devised may be determined, and estate so limited is still a fee, as it will last forever if the contingency does not happen, but so long as the contingency may possibly happen, it is "base," "qualified," or "determinable."

See (1) 40 Cyc. 1412. (2) 40 Cyc. 1386. (3) 40 Cyc. 1431. (4) 40 Cyc. 1392. (5) 40 Cyc. 1393. (6) 40 Cyc. 993, 994, 1407. (7) 34 Cyc. 1659. (8) 40 Cyc. 1407 (1926 Anno.). (9) 40 Cyc. 1405, 1407, 1564 (1926 Anno.). (10) 40 Cyc. 1590. (11) 40 Cyc. 1590.

From Multnomah: GEORGE W. STAPLETON, Judge.

In Banc.

This is a partition suit, and involves the construction of a will, which is made a part of the pleadings therein. The plaintiff, Edith W. Stubbs, on April 5, 1921, filed in the Circuit Court of the State of Oregon for Multnomah County her complaint, in which she alleges, among other things, that the defendant Security Savings and Trust Company is a duly organized banking and trust corporation. In paragraph seven she avers that the plaintiff and the defendants Richard C. Williams and Claire S. Williams are

11. See 28 R. G. L. 241.

owners as tenants in common of certain real property situate in Multnomah and Washington Counties, State of Oregon, which property she describes. She alleges that she is the owner of an estate of inheritance in the described property, consisting of an undivided one-half interest in fee simple, and that the remaining one-half interest in that property is owned by the defendants Richard C. Williams and Claire S. Williams, which interest was acquired by them by devise from their grandfather, Richard Williams, under the provisions of the will involved herein.

"Plaintiff further avers that in and by said will it was provided that said property so bequeathed to said Richard C. Williams and Claire S. Williams be delivered to and held by the defendant Security Savings and Trust Company in trust for said Richard C. Williams and Claire S. Williams until each of them should attain the age of thirty years, at which time said property should be delivered to them by said Security Savings and Trust Company; it being also provided in said will that should either of said grandsons, Richard C. Williams and Claire S. Williams, die before attaining the age of thirty years, his interest in said property should go to the survivor of the two grandsons; * * that the defendant, Security Savings and Trust Company, of Portland, Oregon, holds the legal title to said undivided one-half interest in said real property as trustee for said Richard C. Williams and Claire S. Williams, in accordance with the provisions of said will as set out in paragraph 9 hereof."

Plaintiff then avers that defendant Hilda Williams claims to hold a mortgage upon the undivided interest of Claire S. Williams in the described real property, but that plaintiff has no knowledge or information sufficient to form a belief as to the char-

acter or validity of that mortgage or the note it secures. Plaintiff makes like averments concerning notes and mortgages claimed to be owned by the defendant W. H. Abel, and similar averments concerning the liens asserted by defendants Linnie Smith, Alfred C. Anderson and Carrie G. Anderson, First National Bank of Hoquiam, Washington, Chanslor & Lyon and Quimby & Wilson.

The defendant Claire S. Williams died on April 7, 1921, and prior to the service of process. On August 8, 1921, plaintiff filed an amended supplemental complaint, in which she averred the death of Claire S. Williams, and alleged that at the time of his death he was under the age of thirty years, and that under the provisions of the will his interest in the real property described in the complaint, being a conditional estate and acquired by virtue of the testamentary devise made by Richard Williams, had become vested in Richard C. Williams, who was then above the age of thirty years. Plaintiff further avers that Claire S. Williams left surviving him a widow, Hilda Williams, and an only child, Clara Jane Williams. She avers the appointment of the defendant Ben Hur Lampman as administrator with the will annexed of the estate of Claire S. Williams, deceased.

The various defendants filed their answers, some of whom averred upon information and belief that Claire S. Williams had reached the age of thirty years prior to his death and under the will of Richard Williams, deceased, had become entitled to the undivided one-fourth interest in the property described in the complaint, while others admitted that he had not attained the age of thirty years but alleged that under the terms of the will of Richard

Williams, his grandfather, a fee-simple title vested in Claire S. Williams in and to the real property described in the complaint, and that under the will he took an unconditional title, in fee, to an undivided one-fourth interest in that real property. All assert the validity of their liens, but some deny the validity of the lien of Hilda Williams and the claims of the defendant W. H. Abel.

The defendant Security Savings and Trust Company, answering, averred that the defendant Richard C. Williams, prior to the commencement of the suit, had reached the age of thirty years; that Claire S. Williams, defendant, died on April 7, 1921, under the age of thirty years;

"That in and by the last will and testament of Richard Williams, deceased, * * this defendant was appointed and created trustee of an undivided one-half interest in the real property in paragraph seven of plaintiff's complaint described, for the trusts, uses, and purposes which are set out in said will, and this defendant accepted said trust, entered upon the discharge thereof, and is now acting as such trustee."

The defendants, Richard C. Williams and Vera Williams, his wife, filed their answer and averred that the defendant Richard C. Williams was then the owner in fee of an undivided one-half interest in the real property described in paragraph seven of plaintiff's complaint.

Trial was had, and on September 6, 1922, the court filed its findings of fact and conclusions of law, reading, in part, as follows:

"That the estate given, devised and bequeathed to the defendants Richard C. Williams and Claire S. Williams by the will of their said grandfather was, upon final settlement of his estate, paid, turned over,

and delivered to the defendant the Security Savings and Trust Company in accordance with the terms of the will of the deceased, to be held, controlled, managed, and loaned by said Security Savings and Trust Company until said grandsons attained the age of thirty years.

"That the defendant Claire S. Williams departed this life on or about the 7th day of April, 1921, being then under the age of thirty years, namely, of the age of about twenty-eight years."

Based upon the above findings, the court made the following conclusions:

"That Claire S. Williams, grandson of Richard Williams, took under the will of his grandfather a determinable fee in the real and personal property devised and bequeathed to him, as described in the pleadings in this suit, and upon the death of said Claire S. Williams prior to arriving at the age of thirty years, said estate passed to and became vested in his brother, the defendant Richard C. Williams. * * "

The court further found, as a conclusion, that the various defendants who were asserting liens upon the real property had no right, title, interest, claim or estate therein.

Objections were made and exceptions reserved to the findings and conclusions.

The court decreed "that the plaintiff, Edith W. Stubbs, has an estate of inheritance in, and is the owner of, the undivided one half, in fee simple," of the real property described in paragraph seven of her complaint; that the defendant Richard C. Williams had an estate of inheritance in the remaining one half of that property in fee simple, and that the possession of that undivided one-half interest was in the defendant Security Savings and Trust Company,

which company had received the same under the terms of the will involved herein.

The appealing defendants assign numerous errors.

AFFIRMED.

For appellant W. H. Abel there was a brief over the names of *Messrs. Welsh & Welsh, Messrs. Angell, Fisher & Sabin* and *Mr. Stephen J. Chadwick.*

For appellants Hilda Williams and Ben Hur Lampman, Administrator, there was a brief over the name of *Mr. Jay Bowerman.*

For appellant Clarence A. Bean there was a brief over the names of *Mr. William E. Campbell* and *Messrs. Angell, Fisher & Sabin.*

For appellants Alfred C. Anderson, Carrie G. Anderson and First National Bank of Hoquiam, Washington, there was a brief over the names of *Mr. Albert H. Tanner, Mr. F. L. Morgan* and *Mr. John Van Zante.*

For appellants there were oral arguments by *Mr. John T. Welsh, Mr. Homer D. Angell* and *Mr. Jay Bowerman.*

For respondent Edith W. Stubbs there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin* and *Mr. Edgar Freed.*

For respondent Richard C. Williams and Vera Williams there was a brief over the name of *Mr. Chester V. Dolph.*

For respondent Security Savings & Trust Co., there was a brief over the name of *Mr. Blaine B. Coles.*

For respondents there were oral arguments by *Mr. Joseph Simon* and *Mr. Edgar Freed.*

BROWN, J.—Rood, in his work on Wills, at Section 416, makes the following observation:

" 'Wills and the construction of them do more to perplex a man than any other learning,' said Lord Coke, adding that these surpass the science of law, and history confirms his remark. On no other branch of the law are decided cases of so little value as precedents. Half a century ago Judge Story said: 'The cases almost overwhelm us at every step of our progress (How much more so now!); and any attempt even to classify them, much less to harmonize them, is full of the most perilous labor.' "

The above excerpt was written by Professor Rood more than twenty years ago.

Some of the defendants say in their brief:

"Why should the testator desire to cut off his lineal descendants? Such a result is contrary to natural justice, and the court in the absence of a clear expression of intention to that effect, should not presume such an intention."

1. In our interpretation of the will of the testator, we shall not assume that it was his intention to disinherit any heir.

Hawkins on Wills (2 ed.), pp. 4 and 5, makes the following concise statement concerning the construction of wills:

"No man is bound to make a will in such a manner as to deserve approbation from the prudent, the wise, or the good. A testator is permitted to be capricious and improvident, and is, moreover, at liberty to conceal the circumstances and the motives by which he has been actuated in his dispositions. Many a testamentary disposition may seem to the world

arbitrary, capricious, and eccentric, for which the testator, if he could be heard, might be able to answer most satisfactorily.''

2. We have read the will with the object in view of ascertaining, not the intention simply, of Richard Williams, but his expressed intentions contained in his will. It has been written in *Shore* v. *Wilson* (9 Cl. & F. 525), by Coleridge, J.:

''The object of all exposition of written instruments must be, to ascertain the expressed meaning or intention of the writer, the expressed meaning being equivalent to the intention.''

See, also, Or. L., § 10124; *Gildersleeve* v. *Lee,* 100 Or. 578 (198 Pac. 246), and the Oregon cases there noted; *Closset* v. *Burtchaell,* 112 Or. 585 (230 Pac. 554).

''Proposition IV,'' relating to the general principles of construction of wills, as laid down by Hawkins on Wills (2 ed.), page 6, reads:

''The intention of the testator, which can be collected with reasonable certainty from the entire will, with the aid of extrinsic evidence of a kind properly admissible, must have effect given to it, beyond, and even against, the literal sense of particular words and expressions. The intention, when legitimately proved, is competent not only to fix the sense of ambiguous words, but to control the sense even of clear words, and to supply the place of express words, in cases of difficulty or ambiguity.''

From the famous maxims of Sir James Wigram, we quote his ''Proposition V'':

''For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed

as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will.

"The same (it is conceived) is true of every other disputed point, respecting which it can be shown that a knowledge of extrinsic facts can, in any way, be made ancillary to the right interpretation of a testator's words." Wigram on Wills, Extrinsic Evidence, p. 142.

Oregon Laws, Section 713, provides:

"When the terms of an agreement have been reduced to writing * * , there can be * * no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases: * *

"(2) * * But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in Section 717, or to explain an ambiguity, intrinsic or extrinsic. * * The term 'agreement' includes deeds and wills. * * "

The statute then provides this rule for the construction of written instruments, including wills, as well as contracts between parties:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." Or. L., § 717.

3. It is well settled in this jurisdiction that when a written instrument is susceptible of conflicting interpretations, it is competent to ascertain by parol evidence, from the circumstances surrounding its execution, the intention and object of the parties, and thereafter to enforce it in accord with such inten-

tion: *Baker County* v. *Huntington,* 46 Or. 275 (79 Pac. 187); *Wade* v. *Northup,* 70 Or. 569 (140 Pac. 451).

This court, speaking through Mr. Justice LORD, in *Jasper* v. *Jasper,* 17 Or. 590, 594 (22 Pac. 152, 154), after stating the general rule for the construction of wills as gathered from a consideration of the whole instrument, said:

"And this is often aided by extrinsic circumstances surrounding its execution, and showing the situation of the parties, whereby light is thrown on the motive or the intention which may be reasonably supposed to have influenced the testator in the disposition of his property."

In *Moreland* v. *Brady,* 8 Or. 303, 313 (34 Am. Rep. 581), Mr. Justice BOISE, in discussing the rule governing the interpretation of written instruments, wrote:

"The rule excluding oral proof in explanation of written instruments applies to the language of the instrument, and not to its import or construction (1 Greenleaf Ev., § 277). But the written instrument 'may be read in the light of surrounding circumstances,' in order to more perfectly understand its true meaning.

"It is very common 'to receive oral proof to show that language was used in a peculiar sense, or that one term was used for another.' "

4. But in the case at bar, the will itself, shows that the testator used technical terms interchangeably.

The court, in endeavoring to construe this will so as to ascertain the intention of the testator, will occupy, so far as possible, the position of the testator, in order to think as he thought, and to understand as he understood.

"The courts will consider the condition of his family and estate, the comparative amount of realty and personalty, his affection for the legatees, his social relations, the mode of life in which his family have been reared, and the means provided by him in his lifetime for their culture and happiness." 30 Am. & Eng. Ency. of Law (2 ed.), 667.

To like effect is 28 R. C. L., § 244, Wills.

5. Further than this we shall not go. This will contains no ambiguity as to, beneficiaries or as to things bequeathed or devised; and we shall not resort to surrounding circumstances for the purpose of importing into the will an intention not therein expressed.

Richard Williams was born in Ohio on November 10, 1836. He was admitted to practice law in Oregon in 1857. After practicing in various parts of the state he settled in Portland in 1871. In the prime of his life he became one of the best known lawyers in the northwest. In April, 1914, being in feeble health, he made his will. At the time of the execution of his will, he possessed an estate representing his own accumulations, of the value of half a million dollars or more, consisting of real and personal property. On June 19, 1914, he died. At the time of his decease he was a widower, with two lines of lineal descendants living. Edith W. Stubbs, a daughter, was the mother of Robert W. Stubbs and John C. Stubbs. Richard C. Williams and Claire S. Williams, grandsons, were the sons of his deceased son, George Williams, and until his death the testator had supported the widow of George Williams and her two sons above named. His will was admitted to probate on June 26, 1914. The final account of the executors was approved by order of the probate

court of Multnomah County, Oregon, on October 9, 1915. In the order settling the estate the court said:

"That by the terms of the will of deceased, the Security Savings and Trust Company of Portland, Oregon, is made trustee of the money, notes, and accounts belonging and bequeathed to said Richard C. and Claire S. Williams, and also the possession of all real estate devised to them, also the income arising therefrom, to be held and managed by said company as directed by said will."

The record discloses that about three years after his grandfather's death Claire S. Williams filed in the Circuit Court of the State of Oregon for Multnomah County a petition "for funds to prevent the depletion of trust estate." His petition, which he supports by his affidavit, recites that under the terms of his grandfather's will he is to "receive an estate valued at upwards of $200,000 upon his attaining the age of thirty years; that under the terms of said will the said estate is placed with the Security Savings and Trust Company, a corporation, as trustee, to be held, controlled and managed by it." The petition then recites that petitioner is the defendant in a fifty thousand dollar damage suit prosecuted by one Clarence A. Bean by reason of his alleged alienation of the affections of Bean's wife. He asserts his inability to defend the action, and that, if it is not defended, it will result in a judgment lien against his estate in the sum of $50,000, which will be collectible out of the estate when he receives the same, and that it will deplete his estate to the extent of about one third of its value. The trust company filed an answer admitting its trust and asking the court to determine the necessity for, and the amount of, the proposed fees. The court ordered

that an allowance be made to the petitioner for his defense.

We have referred to the matter of the above petition and the probate proceedings for the purpose of showing the practical construction that was placed upon the will by the parties interested therein. No attempt was made by the heirs to dismember the will by interpreting it to mean what the defendants now assert it means. The devisee, Claire S. Williams, treated his devise as contingent upon his living to the age of thirty years, and such was the construction placed upon the will by the other beneficiaries.

"Although the interpretation placed upon a will by the parties in interest is a circumstance in favor of a similar construction by the court, yet their interpretation is not entitled to control the court." 30 Am. & Eng. Ency. of Law (2 ed.), 673.

To the same effect is 40 Cyc. 1427.

See *Pate* v. *French,* 122 Ind. 10 (23 N. E. 673); *Smith* v. *Bartlett,* 79 N. Y. App. Div. 174 (81 N. Y. Supp. 231); *Dorrance* v. *Dorrance,* 238 Fed. 524 (151 C. C. A. 460); *Guilford* v. *Gardner,* 180 Iowa, 1210, 162 N. W. 261; *Renwick* v. *Macomber,* 225 Mass. 380 (114 N. E. 720); *Matter of Young's Estate,* 92 Misc. 633 (157 N. Y. Supp. 494); *Rosenstein* v. *Rosenstein,* 103 Misc. Rep. 1 (170 N. Y. Supp. 280); *Phillips* v. *Phillips,* 188 Ky. 245 (221 S. W. 557).

The will of Richard Williams, so far as is material to this opinion, reads:

"First: I give, devise and bequeath to my daughter, Edith W. Stubbs, my home place, * * together with the household furniture * * .

"Second: I give, devise and bequeath to my grandsons, Richard C. Williams and Claire S. Williams, sons of my deceased son, George, (here follows description of real property devised to them).

"Third: I give and bequeath to each of my grandsons, Richard C. Williams and Claire S. Williams, Robert W. Stubbs and John C. Stubbs, Two Thousand and Five Hundred Dollars.

"Fourth: To my daughter-in-law, Mary E. Williams, widow of my deceased son, George, I give, devise and bequeath my property in the town of Newberg * * , upon which she now resides. * *

"Sixth: All the rest, residue, and remainder of my property, real and personal, of every description, I give, devise and bequeath, to my daughter, Edith W. Stubbs, one-half thereof, and to Richard C. Williams and Claire S. Williams one-half thereof, subject, however, to such disposition as I may hereinafter make of any portion thereof.

"Seventh: It is my desire and I direct that the several portions and amounts hereinbefore devised and bequeathed to my grandsons shall, on the final settlement of my estate, be paid and delivered to the Security Savings and Trust Company, Portland, Oregon, or other suitable and safe company or person, to be held, controlled, managed and loaned on good and sufficient real estate security until each of my said grandsons shall attain the age of thirty years, at which time said trustee shall pay over and deliver to such grandson the property and money so received, together with all rents, interest, and accumulations thereof."

The will then provides compensation for the trustee. It further provides that the trustee may pay to either of the testator's grandsons such part of the income from said fund as shall in the judgment of Edith W. Stubbs be reasonable, to enable him to pursue his studies or acquire a profession or trade; that if any beneficiary named in the will shall present any claim against testator's estate, or shall encourage any litigation to annul the will, such person shall take nothing under it, "and whatever bene-

fit such person would otherwise have had shall be
forfeited and turned into the residuary estate and
shall be distributed according to that provision of
this will.''

The next provision constitutes the pivotal point
of the case, and the meaning expressed therein is
decisive of this cause. It reads:

"Should any one of my grandsons die before re-
ceiving the legacy herein provided for him, such por-
tion as he would otherwise have received shall go
to his surviving brother. Should both brothers die
before arriving at the age to receive the legacy or
legacies provided for them, then such legacy or
legacies that would otherwise have gone to them
shall become a part of the residuary legacy herein
provided in the sixth paragraph of this will.''

6–8. In the law of wills, "devise" is properly used
of realty, "bequeath" is used of personalty, and
"legacy" as a gift of money or other personal prop-
erty. A "residuary legacy" is a "bequest" by will,
of all the testator's personal estate not otherwise
effectually disposed of by that document. A "por-
tion," as here used, is the share falling to a child
from a parent's estate or from the estate of any
person bearing a similar relation.

"None of these words have so fixed a legal mean-
ing, however, that a gift will fail because testator
does not use the words descriptive of the gift or the
act of giving with technical accuracy. A 'devise' is
often miscalled a 'bequest,' or 'bequest' is often used
to include both realty and personalty, or is used of
a gift of money alone.'' Page on Wills, p. 3.

"The term (legacy) is more commonly applied to
money or other personal property, * * than to real
estate; but 'devise' standing, already, as we have
shown, in technical contrast with 'bequest' to mark
a distinction, this word 'legacy' acquires readily a

popular sense, which regards rather the value of the gift than the elements, real or personal, of which it may happen to be composed.'' 1 Schouler on Wills, Executors and Administrators (5 ed.), § 5.

''A legacy is a gift of personal property by will, but the word may include realty.'' 40 Cyc. 994.

2 Pope, Legal Definitions, page 869, quotes the following from *Wilson* v. *Wilson,* 261 Ill. 178:

''Technically, a 'legacy' means a gift of personal property by will, but it is well known that in common practice it is frequently used in referring to a gift of real estate and the word 'devise' is often used in referring to a gift of personal property. In construing wills, courts will give to either term the meaning intended by the testator, without regard to its strict technical meaning. 18 Am. & Eng. Ency. of Law, 709.''

''The term (legacy) is more commonly applied to money or personal property, although sometimes used with reference to a charge upon real estate: 2 Williams, Executors, 947; 5 Term Rep. 716; 1 Burrows, 268; 7 Ves. 391, 522.'' Cyclopedic Law Dictionary, p. 538.

See, also, 2 Bouvier's Law Dictionary, p. 1900.

''The terms used to designate gifts of realty and personalty, respectively, have no fixed legal meaning, and when used interchangeably in a will do not affect the validity of the gift.'' Thompson, Wills, § 8.

''The words 'legatee' and 'devisee' are frequently used by the testator interchangeably, with a preference for the former word, as one with which testators are more familiar.'' 1 Underhill on the Law of Wills, p. 431.

''When Words descriptive of Personalty only pass Real Estate.

''It remains to be observed, that words applicable exclusively to personal estate have sometimes, by force of the context, been held to include land. This frequently happens where an expression is evidently

used as referential to and synonymous with an anterior word, clearly descriptive of real estate; in which case its extent of operation is measured, not by its own inherent strength, but by the import of its synonym. Thus, in *Hope D. Brown* v. *Taylor* (*h*), where a testator, after devising certain lands to A., B., and C., and giving pecuniary legacies to B. and C., provided that, if either of the persons before named died without issue, then the said legacy should be divided equally between them that were alive, it was held that the word 'legacy' in this clause extended to the land before devised." 1 Jarman on Wills (6 ed.), p. 719.

" 'Legacy,' as used in wills, may be applied to real estate, if this construction is necessary in order to effectuate the intention of the testator." 5 Words and Phrases, p. 4056.

"While the word 'devise' is the appropriate term to pass title to real estate, and 'bequeath' the term applicable to gifts of personal property, a strict adherence to technical words is not necessary to give effect to a testator's intent, and the fact that the word 'devise' is not used does not prevent the title to real estate passing by the use of the word 'bequeath.'" *Mills* v. *Tompkins,* 110 App. Div. 212 (97 N. Y. Supp. 9, 10)." 3 Words and Phrases (Second Series), p. 63.

The case of *Dann* v. *Canfield,* 197 Mass. 591, 593 (84 N. E. 117, 14 Ann. Cas. 794), involved the meaning of the words "residuary legatee." The will contained numerous specific bequests of money, a specific devise of real property, and provisions for the creation of a trust fund, with directions for the payment of the income and portions of the principal to divers persons, and further directions that in certain contingencies "this portion shall revert to my general estate." The last paragraph of the will reads:

"I hereby name and constitute my adopted daughter, L., as my residuary legatee."

In that case the Supreme Court of Massachusetts held that the term "legatee" was frequently used to designate a person who takes land as well as personalty, and that—

"In common parlance the term implies any person who receives a benefit under a will. Indeed, as said by Cranworth, Lord Chancellor, in *Windus* v. *Windus, ubi supra,* 'There is no magic in the words (residuary legatee) themselves.' Hence courts, in construing the term, look at the whole of the will, or in other words, at the context for the purpose of getting at the real meaning of the testator."

See, also, valuable cases there cited.

"Where the intention of the testator clearly appears, it will control the legal operation of the words, no matter how technical they may be. Thus, by force of the context of the will, the word 'legacy' has been held to apply to realty; the term 'devise' has been held to refer to personalty only; the term 'bequest' has been held synonymous with 'devise'; the 'residuary legatee' has been held, by interpretation, to take the residue of both the real and personal estate; and the word 'effects' may include real estate if, from other expressions used in connection with the term, it would appear that such was the intention of the testator." 1 Commentaries on Wills, Alexander, p. 34.

From the expressed intention contained in his will, it is clearly evident that Richard Williams designed to hold the Williams fortune within the Williams family. It is likewise evident therefrom that it was his purpose to dispose of his property in such manner that his estate would descend equally to the two lines of lineal descendants. It is also obvious that he had the utmost confidence in the fidelity and judgment of his daughter, Mrs. Stubbs. It is equally plain that the testator, a lawyer of wide experience

and of great business acumen, deemed it necessary, in order to preserve the Williams estate, to provide that the portions devised and bequeathed to his grandsons should not pass to them until they should attain the age of thirty years.

9. From a consideration of all the words and clauses of the will, in their relation with all other words and clauses thereof, we are forced to the conclusion that the testator used the words in question, not in a technical, but in a broad, sense. The terms "residuary estate" and "residuary legacy" were used synonymously, as were the words "devise" and "bequeath," "legacy" and "portion." The possession of real property may be "delivered" and "received." To illustrate: A receiver may "receive" personal and real property in trust.

Robert W. Stubbs and John C. Stubbs are each bequeathed the sum of $2,500 as their respective portions. The portions bequeathed and devised to Richard C. and Claire S. Williams consist of real and personal property, the portion of each of them being of the value of about $150,000. However, the immediate possession or enjoyment did not vest in the beneficiaries, but the "several portions" passed to a trustee to be administered in accordance with the terms of the will. Under the terms of that will, if Claire S. Williams had lived until he became thirty years of age, it would have been the duty of the trustee to pay over the money and deliver all property, including the possession of the real estate, together with the rents therefrom, to him.

Illustrating the meaning of the term "portion," as used by the testator, we quote:

"A father may divide his estate by will among his children so as to make their several portions great or small." Fernald, Synonyms, p. 279.

The will provides:

"Should any one of my grandsons die before receiving the legacy herein provided for him, such portion as he would have otherwise received shall go to his surviving brother."

We have already noted that the testator has employed the words of his will in a broad sense. In the sentence following the above, he designates his residuary estate as a "residuary legacy." "Such portion," in the quoted sentence, refers back to "the legacy" mentioned therein. The testator used the terms "portion" and "legacy" as interchangeable.

From the will, considered in its entirety, it clearly appears that in making the above provision the testator intended that in the event of the death of one of the brothers his portion should go to the survivor.

"The term 'portion' is defined to be that part of the parent's estate, or all of the estate of one standing in the place of a parent, which is given to a child." Wills, Thompson, p. 185.

In the instant case, if the term "legacy" were to be applied in its technical sense, it would embrace, not only the $2,500 bequest, but all the personal property contained in the portion of Claire S. Williams. The will treats the portion of each as a unit, and the testator did not intend to separate the real from the personal property in this blended mass: *Aitken v. Sharp et al.*, 93 N. J. Eq. 336 (115 Atl. 912).

10, 11. Now, referring to the claim that an absolute fee in the real property was devised by the will: Our statute provides that when an estate in fee simple is clearly devised a person, the estate so devised cannot be cut down or modified by subsequent clauses in the will, unless the intention to do so is manifest

from words as clear and certain as those which give the fee-simple estate: Or. L., § 10121. See *Savage v. Savage,* 51 Or. 167 (94 Pac. 182); *Mattison* v. *Mattison,* 53 Or. 254 (100 Pac. 4, 133 Am. St. Rep. 829, 18 Ann. Cas. 218); *Imbrie* v. *Hartrampf,* 100 Or. 589 (198 Pac. 521).

Claire S. Williams had a qualified or determinable fee in the real property described in the complaint. From a text-writer we adopt the following as applicable here:

"Limited or conditional fees are (1) base, qualified, or determinable fees; and (2) fees conditional at common law. The terms 'base fees,' 'qualified fees,' and 'determinable fees' have been used promiscuously as descriptive of an estate which has a qualification subjoined thereto, and which may be determined whenever the qualification annexed to it is at an end. But these terms have been distinguished and classified under the head of 'modified fees.' A base, qualified, or determinable fee is created by a devise in fee, coupled with the provision that upon the happening of a certain condition or contingency the estate so devised may be determined. The estate, when so limited, is still a fee, for the reason that it will last forever if the contingency does not happen, but so long as it is possible that the contingency may happen, it is a base, qualified, or determinable fee. * * The event or contingency which may be provided for to defeat the qualified or defeasible fee, may be the marriage of the first devisee, or his death before marriage, or death before distribution, or death before attaining a certain age. * * No particular phraseology is necessary to introduce the future event; * * provided they clearly express the dependency of the duration of the estate upon the future event." Thompson, the Law of Wills, § 235.

See *Imbrie* v. *Hartrampf, supra,* and the authorities there cited; 21 C. J., § 149, Estates; 11 R. C. L., pp. 466, 467; 2 Alexander on Wills, § 933.

To sustain the position of the appellants, the court would be compelled to mutilate the testator's statement of his expressed intent and give effect to one clause, or part thereof, and deny all effect to the testator's expressed qualification or condition attached to such devise. While the testator could not have made two repugnant, valid, devises, it was within his power to devise a conditional, defeasible or determinable fee. The testator declared in his will:

"I give, devise, and bequeath * * to Richard C. Williams and Claire S. Williams one-half thereof (testator's residuary estate), *subject, however, to such disposition as I may hereinafter make of any portion thereof.*"

In plain language, he gives his two grandsons notice that their title to the property bequeathed and devised by paragraph 6 of the will is subject to any lawful "disposition" that the testator might "hereinafter make." The testator then proceeded to make a disposition of that property that plainly shows that Claire S. Williams never possessed more than a qualified or defeasible fee in the real property involved herein.

This case should be affirmed, without costs in this court. It is so ordered.                AFFIRMED.

Rehearing denied June 2, 1925.

ON PETITION FOR REHEARING.

(236 Pac. 505.)

For the motion: *Messrs. Welsh & Welsh* and *Stephen J. Chadwick,* for petitioner W. H. Abel.

Of counsel: *Messrs. Harris, Smith & Bryson* and *Mr. Charles A. Hardy; Mr. Jay Bowerman,* for petitioners Hilda Williams and Ben Hur Lampman.

No appearance *contra.*

BROWN, J.—W. H. Abel, Hilda Williams and Ben Hur Lampman have filed a petition for a rehearing of the above cause.

This is a partition suit involving the construction of the will of Richard W. Williams, deceased, in so far as it pertains to the title of the property sought by the suit to be divided. For a statement of the pertinent facts and our conclusions therefrom, see our opinion filed February 24, 1925, reported in 114 Or. 610 (233 Pac. 852), wherein we held that the testator, by his will, in language that ought not to be misunderstood, devised to Richard C. Williams and Claire S. Williams one half of the real property involved in this suit, "subject, however, to such disposition as I may hereafter make of any portion thereof."

Clearly, the testator's disposition of that property is consistent with a defeasible fee in Claire S. Williams, as provided by subsequent clause in the will.

In their brief in support of their petition for rehearing the petitioners say, among other things:

''The opinion and decision of the court does not make it clear * * that the language used in clauses Six and Seven will have no application to the real property devised under the second clause of the will. While this property is not included in the subject-matter of the suit, expressions used in the opinion are of such general character that it might be claimed that a rule of property is established by the decision as the same now stands; it is therefore important that any final decision made in this case should expressly exclude any intention of construing the second clause of the will so as to create any impression that the fee thereby devised is in any way debased.''

We had no intention of determining the title to any real property other than that described in the complaint. Neither did we intend to intimate whether Claire S. Williams took a fee simple, or a debased, title to the property described in Section 2 of the will.

We have studied the record with care and are satisfied that we have construed the will according to the expressed intention of Richard W. Williams, deceased. The petition for rehearing will be denied.

REHEARING DENIED.