### HOWELL v. DEADY et al.

#### No. E—9641.

District Court, D. Oregon.

May 19, 1941.

See, also, 48 F.Supp. 123.

Maguire, Shields, Morrison & Biggs and Donald Grant, all of Portland, Or., for plaintiff.

Simon, Gearin, Humphreys & Freed and Nicholas Jaureguy, all of Portland, Or., for defendants.

**JAMES ALGER FEE, District Judge.**

Some confusion has arisen in the minds of counsel over the interpretation of the will by the court, in the opinion on motion to dismiss. A recrystallization of the decision may, therefore, be of moment.

The court held, taking the will by its four corners, that the clear intention of the testatrix was, first to give two-thirds of the real property in fee simple to her son, Henderson Brooke Deady, and one-third jointly, by like title, to her grandsons, Hanover and Matthew Edward Deady; and second, to control the disposition of the income from the whole property for a period of at least twenty-five years. In the third place, based upon these clear objectives, the court found a desire to substitute Hanover and Matthew Edward Deady for Henderson Brooke Deady as fee devisees, upon death of the latter during her lifetime without children. In the fourth place, although the court found the will required construction in order to discover intent, no ambiguity latent or patent, with regard to the devolution of title, was discovered. These findings will now be reviewed in this order.

As to the first point, the intent to give a fee simple to Henderson to two-thirds of the real property was shown by many factors. He was her sole surviving, and apparently favorite son. Another parcel is given to him in fee simple. He is principal legatee, one of the residual legatees, and trustee and executor. His estate was incumbered expressly with the identical "conditions, provisions and charges" and only those, which incumbered the estates given the grandsons, which latter were admittedly in fee simple. It is further provided that after ten years, the division of the income shall "follow the title and ownership of said real property" and be distributed two-thirds to Henderson Brooke Deady and one-third to the grandsons. The residuary estate is given two-thirds to Henderson and one-third to Hanover and Matthew.

Everyone admits the son received this portion of the property in fee, but defendants claim this title was defeasible. This clear intention to give him fee simple title was mirrored in the will, since the Oregon rule requires that when a fee simple is given in a prior clause, such title shall not be cut down by words of doubtful import in a subsequent clause.[1]

[1] Irvine v. Irvine, 69 Or. 187, 190, 136 P. 18; Imbrie v. Hartrampf, 100 Or. 589, 596, 198 P. 521.

118

The second clear purpose of the will was to prevent alienation of the property for twenty-five years and to keep the property intact to pay off the mortgage. Mrs. Deady had, by her acumen, turned this realty into a paying piece of property and unquestionably wished it held intact and desired her devisees to deal with the income rather than with the title. These provisions would have violated the rule against perpetuities if devolution of the realty was based thereon. The cognate rule against prolonged restrictions on alienation was violated thereby.

■ Third, upon these clear objectives, the court found the words, whereby the grandsons claim to obtain a fee simple interest in the two-thirds of the property given to Henderson Brooke, were of doubtful import. To the lay mind these words might indicate, if viewed without the context, that the fee was to pass any time Henderson died without issue. But the draughtsman was a lawyer, who must have been acquainted with the Oregon rule that a fee simple given in one clause can not be cut down without a clear cut expression in a subsequent clause. He must have also known that by the great weight of American authority the words used imported a "substitutionary intent." The court gave full weight to the opinions of the Supreme Court of Oregon in construing similar wills. The court noted that the life of Henderson was not used as the time for devolution of the title. The intent not to make the expiration of the trust and shackle on alienation, the time of devolution was also noted. This period was beyond a life or lives in being, plus twenty-one years and the period of gestation, so that an executory device dependant thereon would have been void. Construed according to the canons, no other solution was possible but to find Henderson held fee simple title, if he outlived his mother. All through the opinion, the court refers to and follows the principle enunciated by the Oregon court and the statutes of the state that the intention of the testatrix gathered from the will as a whole, without strict regard for the canons of construction, was binding. Although an attempt was made to reconcile the finding with the canons and the Oregon cases, the court ultimately found the intention of

Mrs. Deady was to give a fee simple title to two-thirds of the real property to her sole surviving son, Henderson Brooke Deady, if he outlived her.

Finally, nowhere in the opinion of this court is it indicated that the will contains ambiguities, either patent or latent, regarding title to the real property, although it is noted that if the draughtsman had made the gift to Henderson, dependant not only upon the "conditions, provisions and charges" as was the gift to the grandsons, but had added "and subject also to the executory devise", a different result might have followed. Clarity of interpretation might also have resulted from an addition to the words of the Seventh Clause of the Will as follows: "Seventh, That in the event my son Henderson Brooke Deady die without issue *during my lifetime*", then to the grandsons. There was a problem of construction, but no ambiguity so far as the devolution of the real property is concerned.

■ The will is before the court. The general rule is that explanation, remarks or declarations of intention by the testator will not be received to explain, modify or vary the construction of a testament.[2] The formalities surrounding the execution of a will could be thus entirely destroyed.

There is nothing in the Oregon cases in contravention of that rule. In Stubbs v. Abel, 114 Or. 610, 621, 233 P. 852, 236 P. 505, the court construed the will in the light of the surrounding circumstances but did not specifically pass upon declarations of a testator. In Schramm v. Burkhart, 137 Or. 208, 212, 213, 2 P.2d 14 the court did give weight to oral declarations to prove a contract upon which joint and mutual wills between husband and wife were based. But this is an entirely different doctrine and has nothing to do with the interpretation of wills not so based. See O.C.L.A. § 2-206; Holman v. Lutz, 132 Or. 185, 282 P. 241, 284 P. 825. In Crown Co. v. Cohn, 88 Or. 642, 655, 172 P. 804, the court found a latent ambiguity and used expressions of the trustor and testimony of the surrounding circumstances to clear the matter up.

Since the court here held that there was a clear purpose to give a fee simple title to Henderson on the face of the will, none

---

[2] Hansen v. Oregon Humane Society, 142 Or. 104, 118, 18 P.2d 1036; In re Hodgkin's Estate, 110 Or. 381, 221 P. 169, 223 P. 738; Closset v. Burtchaell, 112 Or. 585, 230 P. 554; Stubbs v. Abel, 114 Or. 610, 233 P. 852, 236 P. 505; Soules v. Silver, 118 Or. 96, 245 P. 1069.

of these authorities are opposed to the construction placed upon the will.

■ The oral expressions of Lucy A. H. Deady are rejected. The problem of construing wills is to find the intention of the testator by a consideration of the language used. Certainly, if there be doubt about identification of an article or person, testimony can be adduced to show this feature.[3] At times, also certain surrounding circumstances may be shown. But the very purpose of requiring formalities in the promulgation of a testament is to prevent the use of loose expressions of the testator to found property rights. The scientific language used by lawyers is a guard against this very thing. Unless it be assumed that the lawyer was incompetent, such expressions must be taken to import the intention supported by the great weight of authority and to express the desire of the testator. Furthermore, dispositions which violate the legal limitations can not be assumed to have been intended by the lawyer, although a vague desire of the testator may have pointed in that direction. There is no ambiguity in the words "die without issue" even though different courts have fixed different periods to give the words effect. If oral declarations of a testator could be used here, such expressions can be used any time a problem of construction of a will arises, which is not the case.[4]

■ Lucy A. H. Deady did not know and could not have forecast the situation with which the court is now confronted. The court certainly is not required, nor even permitted to find the intention she would have if she were writing her will today. If she had given Henderson title to two-thirds of this real property outright and he had sold it to a stranger, it would not have been thought inequitable. The mere fact that the son observed a restraint on alienation and the title has come into the hands of a stranger to her family should not warp the judgment. The situation must be judged, as she viewed it at the time.

Inasmuch as there is a possibility that the court might be required to admit this evidence under Rule 43 (a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it will be viewed as if admitted in order to determine relevancy. It is entirely consistent with the interpretation of the language of the will. Mrs. Deady said she was going to give the property to Henderson "because he was her son and she thought it was only fair and right to put it that way in the will". It is true that Hanover reporting this speech twenty years later couples the gift with the words "if he had children". If that slight change had been made in the will and these two clauses had been so wedded, a different result might have been reached. But Hanover is vitally interested and conceding utmost good faith, his recollection may have distorted these conversations. It is very significant that Mrs. Deady, at such times, declared that she knew Henderson could have no children and that she hoped Amalie would not give him a divorce and that he was a sick man. Even in the form in which these expressions come to the court, through the veil of time and the recollection of a witness, there is a suggestion that Mrs. Deady believed Henderson might die during her lifetime and without issue. The statements that the property would come to Hanover and Matthew some day might have been so conditioned. It is certain that she was impelled by a desire to have the property kept intact as a monument to Judge Deady, which is one of the clear expressions of the will. The other is, that however much she disapproved of her son's course of action, she thought it was "only fair and right" to give him a major share in the property. The addenda "if he had children" may have been coupled with the forgotten expression "during my life". She did unquestionably express affection for her grandsons and regard for their welfare but this might as well have been fulfilled by a gift of one-third of the property as, of the whole.

■ The next question is whether acts and agreements by the parties done after the death of the testator are admissible. The written stipulations of the parties, and papers filed in courts have some relevancy to the interpretation of the instrument placed thereon by the parties them-

---

[3] Soules v. Silver, supra.

[4] "Since the nature or extent of the estate or interest devised is determined by the legal effect of the language of the will, this question must be determined by the process of construction according to established legal principles, and evidence of the testator's declaration of intention is not admissible to show the character or quantum of estate intended to be devised." Note 94 A.L.R. 269, and cases there cited.

selves. In Stubbs v. Abel, supra, the court admitted and considered a petition filed by one of the beneficiaries of a trust, wherein he placed a construction upon his interest. The court sounded a warning to the effect that such interpretations were not binding on the court. The question here is admissibility and not weight. The court therefore generally considers these documents admissible.

The matters relating to a claim presented by the State Treasurer for inheritance tax are rejected for the reason that there was only one claim advanced by the State and liability upon this was admitted by the estate. What relevancy this might have is inconceivable. The State Treasurer raised only the question of the tax due from the estate upon the income paid to Charlotte. The interests of all connected with the estate were the same. No one wanted to pay any more tax than the law required. The State will not be foreclosed from collecting what the law allows.

The inventory and appraisement of the estate of Henderson is also rejected together with the petition for the appointment of an administrator. The only possible relation these documents could have to the situation is to show how someone else may have construed the will. But the administrator may have believed he had no duty in relation to this real property since he could not get possession under Mrs. Deady's will. Whatever he thought or did is immaterial and irrelevant.

Oral declarations of Henderson are admitted. This may be justified either on the theory that plaintiff derives whatever title to real property which he may have from Henderson and therefore any declaration of Henderson's while holding the title is evidence against plaintiff, O.C. L.A. § 2-206, or on the theory that such declarations may form a foundation for estoppel against Henderson and therefore against plaintiff, or possibly on other grounds. See O.C.L.A. §§ 2-210 and 2-208. However, the expressions of Henderson are not admitted upon the ground that there is patent or latent ambiguity in the will, nor as an aid to construction thereof.

However, conversations with other people besides Henderson are not admissible. Nor is the understanding or. construction of any other person admissible upon that ground alone. In using these conversations the court will give them but slight weight when not incorporated in a written document which is under discussion at the time, and give them no weight when in contradiction thereof. But the question now is that of admissibility.

The court admits the statement of Hanover that he relied upon representations of Henderson but reserves the right to weigh the testimony with the circumstances and in the light of the general situation.

A tabulation of the rulings is attached hereto and an appropriate order may be drawn incorporating the substance thereof.

The court adheres to its previous ruling and excludes Defendants Pre-trial Exhibit (a) (certified photostatic copy of Petition for Probate of the Will of Henderson Brooke Deady) p. 65.

The court adheres to its previous ruling and excludes Exhibit (b) (certified copy of Inventory and Appraisement of the Estate of Henderson Brooke Deady) p. 66.

The court adheres to its previous ruling excluding testimony as to the background of the subject matter of conversations between Henderson Brooke Deady and Samuel B. Weinstein, pp. 69, 70.

The court sustains the objection to testimony of Samuel B. Weinstein regarding conversations with Chester Dolph as to what Henderson Brooke Deady was to receive under the will of Lucy A. H. Deady. p. 72.

The court admits in evidence Defendants Pre-trial Exhibit C (copy of complaint for divorce, with agreement attached thereto, in case of Henderson Brooke Deady v. Amalie B. Deady). p. 87.

The court admits testimony of Samuel B. Weinstein as to conversations with Henderson Brooke Deady. pp. 75–81, p. 82.

The court excludes testimony of Samuel B. Weinstein as to whether he relied upon statements of Henderson Brooke Deady as to his interest in the real property in advising Amalie Deady to sign a property agreement in connection with Amalie's and Henderson's divorce. p. 85, p. 87, same ruling.

The court rejects testimony of Samuel B. Weinstein as to discrepancy between agreement and stipulation. p. 92.

The court sustains plaintiff's motion to strike out all the testimony of Samuel B.

Weinstein as to conversation and negotiations with Chester V. Dolph. pp. 97–143.

The court admits testimony of Samuel B. Weinstein as to conversations and negotiations with Henderson Brooke Deady, pp. 97–143.

The court admits testimony of Samuel B. Weinstein as to conversations and negotiations with Henderson Brooke Deady. pp. 97–143. Defendant's Exhibit C is admitted, see supra, p. 87.

The court sustains plaintiff's objection to Hanover Deady's testimony as to conversations with Lucy A. H. Deady regarding the property. pp. 149, 150, 151, 152.

The court overrules plaintiff's objection to Hanover Deady's testimony as to conversations with Henderson Brooke Deady. p. 157.

The court overrules plaintiff's motion to strike Hanover Deady's testimony in regard to conversations with Henderson Brooke Deady relating to stipulations embodied in Defendant's Pre-trial Exhibits. I and J. p. 161.

The court overrules plaintiff's objection to Defendant's Pre-trial Exhibits I (certified photostatic copy of stipulation, Lucy A. H. Deady Estate dated December 18, 1923) and J (certified photostatic copy of stipulation, Lucy A. H. Deady Estate, dated October ——, 1924) and admits said exhibits in evidence. p. 161.

The court overrules plaintiff's objection to Hanover Deady's testimony as to controversy over real property as set out in stipulation. p. 163.

The court overrules plaintiff's objection on ground that question propounded by counsel was leading. p. 163.

The court overrules plaintiff's objection to testimony of Hanover Deady regarding claim of Marye Thompson Deady. p. 164.

The court sustains plaintiff's objection to Hanover Deady's testimony regarding conversations had by Marye T. Deady with Mr. Simon and his mother (Mary E. Deady) and also sustains plaintiff's motion to strike such testimony. p. 165, 166.

The court overrules plaintiff's objection to Hanover Deady's testimony regarding conversations between Mary E. Deady and Henderson Brooke Deady in witness's presence. p. 167.

The court overrules plaintiff's objection and admits in evidence Defendant's Pre-trial Exhibit D (certified photostatic copy

of amended complaint, Marye T. Deady v. Henderson Brooke Deady, et al. p. 169).

The court overrules plaintiff's objection and admits in evidence Defendant's Pre-trial Exhibit E (photostatic copy of compromise agreement between Marye T. Deady, Henderson Brooke Deady, et al). p. 170.

The court overrules plaintiff's objection to testimony of Hanover Deady regarding conversations with Henderson Brooke Deady as to income from the property. p. 171.

The court overrules plaintiff's objection to testimony of Hanover Deady as to his reliance upon statements of Henderson Brooke Deady. p. 171.

The court overrules plaintiff's objection and admits in evidence Defendant's Pre-trial Exhibit A (photostatic copy of affidavit of Henderson Brooke Deady, dated Oct. 29, 1925). p. 178.

The court overrules plaintiff's objection and admits in evidence Defendant's Pre-trial Exhibit K (certified photographic copy of stipulation, executed August ——, 1931, by Henderson Brooke Deady, Joseph Simon, et al.). p. 179.

The court overrules plaintiff's objection and admits testimony of Hanover Deady with regard to Defendant's Pre-trial Exhibit K. p. 180, 187.

The court excludes testimony of Hanover Deady regarding negotiations with Joe Simon leading up to preparation of document which is Defendant's Pre-trial Exhibit K. p. 188, 189.

The court excludes testimony of Hanover Deady regarding discussion with Ralph Wilbur. p. 193.

The court overrules plaintiff's stipulation to testimony of Hanover Deady regarding his reliance upon statement made by Henderson Brooke Deady. p. 194.

The court overrules plaintiff's objection to testimony of Hanover Deady regarding his signing of the stipulation. (Ex. K.)

The court overrules plaintiff's objection and admits in evidence Defendant's Pre-trial Exhibit G (copy of unexecuted agreement between Charlotte Howell Deady, Hanover Deady, and others, dated Oct. 22, 1934). p. 195.

The court adheres to its ruling in regard to the substitution of the original for the copy of Exhibit G. p. 196. This matter is later cleared up by the introduction of the original.

The court's rulings on the letter of Wilbur, Beckett, Howell and Oppenheimer to Joseph Simon, July 10, 1933, is made immaterial by subsequent action of counsel in withdrawing it. pp. 215, 227, 229–232, 238.

The court adheres to its previous ruling denying Plaintiff's motion to strike out testimony of Hanover Deady. p. 235.

The court adheres to its previous ruling overruling defendant's objection to question propounded to Hanover Deady on ground it had already been answered. p. 239.

The court adheres to its previous ruling and admits testimony of Hanover Deady as to conversations with Robert Strong. p. 247.

The court adheres to its previous ruling admitting testimony of Hanover Deady regarding conversations with Joseph Simon. p. 248½.

The court adheres to its previous ruling denying plaintiff's motion to strike the testimony of Hanover Deady regarding conversation with Joseph Simon. pp. 250, 251.

The court adheres to its previous ruling admitting testimony of Jessie Murch as to whether or not she had conversations with Mrs. Lucy A. H. Deady. p. 256, 257.

The court adheres to its previous ruling allowing Jessie Murch to answer counsel's question as to first time Mrs. Lucy A. H. Deady discussed matter with her. p. 257.

The court adheres to its previous ruling striking unresponsive answer of Jessie Murch. p. 257, 258.

The court adheres to its previous ruling sustaining plaintiff's objection to question asked Jessie Murch and testimony as to what Mrs. L. A. H. Deady said. pp. 268, 269.

The court sustains plaintiff's objection to Blanche Catlin's testimony regarding conversations with Mrs. Lucy A. H. Deady. p. 265.

The court adheres to its ruling refusing to strike answer of Blanche Catlin as being unresponsive. p. 268.

The court sustains plaintiff's objection to testimony of Ariel Deady regarding conversations with Mrs. Lucy A. H. Deady. p. 274.

The court overrules plaintiff's objection to testimony of Ariel Deady regarding conversations with Henderson Brooke Deady. pp. 277, 279.

The court sustains plaintiff's objection to testimony of Mrs. Helen Hanson regarding conversations with Mrs. L. A. H. Deady. p. 282.

The court sustains plaintiff's objection to testimony of Matthew Deady regarding conversations with Mrs. Lucy A. H. Deady. p. 287.

The court grants plaintiff's motion to strike question and answer of Matthew Deady as to presents of Mrs. L. A. H. Deady. p. 288.

The court overrules plaintiff's objection to testimony of Matthew Deady regarding conversation of Mrs. L. A. H. Deady about, Uncle Paul, the answer being no. pp. 288–290.

The court sustains plaintiff's objection to Matthew Deady's testimony regarding statements of Mrs. L. A. H. Deady about "When this property becomes your and Hanover's", etc. p. 290.

The court does not rule on plaintiff's objection to Matthew Deady's testimony regarding a letter from his brother because no ruling was requested and the line of testimony was abandoned. p. 292.

The court sustains plaintiff's objections and excludes from evidence Defendant's Pre-trial Exhibits:

F. (Copy of Order of Multnomah County Probate Court of April 21, 1924, determining state inheritance tax in Lucy A. H. Deady estate) p. 301.

L. (Copy of stipulation for settlement of inheritance tax in Lucy A. H. Deady, estate, dated Sept. —, 1936.) p. 302–3.

M. (Copy of petition for determination of inheritance tax on Lucy A. H. Deady estate, filed Oct. 1, 1935.) p. 304.

N. (Copy of Order fixing inheritance tax in Lucy A. H. Deady estate, dated Oct. 1, 1935). p. 304.

O. Copy of letter May 16, 1935, Oregon State Treasurer to First National Bank. p. 305.

P. Copy of letter May 23, 1935, Robert F. Maguire to First National Bank. p. 305.

Q. Letter Oct. 25, 1923, Wilbur, Beckett, & Howell to Joseph Simon, pp. 306–308.

R. Carbon copy of letter Oct. 26, 1923, Joseph Simon to Wilbur, Beckett and Howell. pp. 308, 309.

Note: It is understood that where the court has rejected testimony or excluded

any documentary evidence, all cross-examination as to such testimony or document is also rejected.