FRANK E. MOTT ET AL., EXECUTORS (ESTATE OF
WALTER C. TEAGLE) *v.* THE TEAGLE
FOUNDATION, INC., ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued April 4—decided April 30, 1968

*Everett Fisher,* with whom was *Charles S. Brad-ford,* for the plaintiffs.

*John S. Barton,* for the named defendant.

*William C. Strong* and *William A. Phillips,* with whom, on the brief, was *Frank J. Coyle,* for the defendant Jane W. Boggs et al.

*Francis J. McNamara, Jr.,* with whom, on the brief, were *Robert F. Grele* and *Ridgeway M. Hall, Jr.,* for the guardian ad litem for the defendant Jayne W. Teagle et al.

KING, C. J.  This is a reservation, on an agreed statement of facts, seeking the construction of certain portions of the last will and testament of Walter C. Teagle, who died on January 9, 1962, a resident of Greenwich, at the age of eighty-three. The will was executed March 10, 1960. A little over six months thereafter, Walter C. Teagle, Jr., the testator's only child, died, leaving his widow, Jane W. Teagle (now Mrs. Boggs), and three children, Brenda L. Teagle (now Mrs. Essex), Jayne W. Teagle and Walter C. Teagle III. The problems in construction concern the provisions made for The Teagle Foundation, Inc., hereinafter sometimes referred to as the Foundation, a tax-exempt, charitable corporation established by the testator, under the laws of Connecticut, on June 1, 1944, and to which the testator, during his lifetime, made contributions from time to time in the approximate total amount of $2,600,000.

The testator was a man of great wealth, with assets at the time he made his will and also at the time of his death amounting to over $35,000,000. Before his death, he had made provision, by trusts or outright gifts, for each of his three grandchildren in the amount of over $5,000,000 apiece. In Article Sixth of his will, he made abundant provision for his own widow, and she takes no position in this suit and was defaulted for failure to appear.

The Foundation makes certain claims as to the proper computation and composition of "the balance

of my estate disposed of by this my Will" as the phrase is used in Article Twelfth. The other defendants (Mrs. Boggs and her children) are in agreement among themselves as to the proper construction of the will but do not agree with the construction claimed by the Foundation. Article Fourth, Article Thirteenth, and subdivisions (5), (8) and (10) of Article Twentieth are also involved in the determination of the basic controversy as to the computation and composition of the "balance" referred to in Article Twelfth.

Article Twelfth reads as follows: "Twelfth: I give, devise and bequeath a portion of my estate equal in value to two-thirds ($\frac{2}{3}$) of the balance of my estate disposed of by this my Will and remaining after payment or provision for the payment of my debts, funeral expenses, administration expenses and bequests hereinbefore made, but before the payment or provision for the payment of any taxes referred to in Article Nineteenth hereof, to The Teagle Foundation, Incorporated."

Article Fourth reads in material part as follows: "I give, devise and bequeath to my son, Walter C. Teagle, Jr., if he survives me, or, if he does not survive me, I direct that the same shall be added to my residuary estate to be disposed of pursuant to the provisions of Article Thirteenth hereof:"

The property referred to in Article Fourth consisted of a hunting preserve in Florida and a second hunting preserve in New York, "including [in each instance] all buildings thereon and all rights and easements appurtenant thereto, together with all tangible personal property located thereon or used in connection therewith". Each of these hunting preserves was extensively used by the testator, his son and their friends. The subject matter of Article

Fourth had a total appraised value of about $2,500,000 and included the only real estate owned by the testator at the time of his death.

Since Walter C. Teagle, Jr., failed to survive his father, the alternative provision of Article Fourth became operative, providing "I direct that the . . . [property which would have gone to Walter C. Teagle, Jr., had he survived the testator] shall be added to my residuary estate to be disposed of pursuant to the provisions of Article Thirteenth hereof".

Article Thirteenth provided, in relevant part, that "[a]ll the rest, residue and remainder of my property and estate, both real and personal, of whatsoever kind and wheresoever situated, of which I shall die seized or possessed or of which I shall be entitled to dispose at the time of my death (hereinafter referred to as my 'residuary estate'), I direct shall be disposed of as follows: . . . (B) If [as was the case] my son, Walter C. Teagle, Jr., does not survive me, but his wife, Jane Will Teagle, does survive me, I give, devise and bequeath my residuary estate to the Trustees, hereinafter named, or their successors, In Trust . . . ." This residuary trust is to be held for the benefit of the testator's daughter-in-law and, on her death, for the benefit of the testator's then living descendants.[1] Only if there are no living descendants upon the final termination of the trust does the Foundation receive any part of the residue.

Although each of the four questions reserved involves the computation and composition of the "balance of my estate" under the formula set forth in Article Twelfth, the questions fall into two main

---

[1] Article Fourteenth contains provisions to avoid any violation of the rule against perpetuities but is not otherwise involved in this proceeding.

classes. The first two questions involve the Foundation's claim that the alternative gift over in Article Fourth should not be excluded from the formula balance as a bequest "hereinbefore made". The third and fourth questions involve the Foundation's claim that the deduction of "administration expenses", as used in Article Twelfth, applies only to those administration expenses which the executors, pursuant to authority admittedly adequately given them under Article Twentieth, subdivisions (5), (8) and (10), decide to pay out of principal rather than out of income.

## I

There is, and could be, no dispute that, had Walter C. Teagle, Jr. survived his father, the property forming the subject matter of Article Fourth would have been excluded from the "balance" because it would clearly have been one of the "bequests hereinbefore made" as provided in Article Twelfth.[2] But the Foundation claims that the alternative provision, applicable because of the son's failure to survive his father, was not, itself, an operative bequest under Article Fourth, that the only operative bequest in the alternative provision of Article Fourth was under Article Thirteenth, and that,

---

[2] Parenthetically, it perhaps should be pointed out that there is no claim by anyone that the phrase "bequests hereinbefore made" was inadequate to embrace the real estate referred to in Article Fourth. We think it probable that the quoted phrase was an inadvertance on the part of the scrivener, presumably arising because Article Fourth concerned the only real estate owned by the testator and thus was the only gift which embraced real estate. The word "bequest", while inapt to include a gift of real estate, we think quite obviously should be read here as embracing the real estate in each hunting preserve, as well as the "tangible personal property . . . [respectively] used in connection therewith." 57 Am. Jur., Wills, § 1400; 1 Page, Wills (Bowe-Parker Rev. 1960) § 1.5.

since this article followed Article Twelfth in the will there actually was no bequest "hereinbefore" made within the meaning of Article Twelfth.

The Foundation claims that the language of the alternative provision in Article Fourth providing that the property involved "shall be added to my residuary estate to be disposed of pursuant to the provisions of Article Thirteenth hereof" disposes of nothing and leaves the disposition of the property to be controlled wholly by Article Thirteenth, subdivision (B), which did make use of the standard dispositive phrase "I give, devise and bequeath" which was lacking in the alternative provision in Article Fourth. We may assume, without so deciding, that the Foundation is correct in claiming that the phrase "bequests hereinbefore made" applies only to effective bequests as distinguished from lapsed, void or otherwise inoperative bequests. *Crane's Appeal,* 2 Root (Conn.) 487, 488. But we cannot accept the Foundation's basic claim that the alternative disposition of the property made in Article Fourth was not a complete and effective disposition so as to fall into the classification of "bequests hereinbefore made".

The property in Article Fourth falls into the residuum, not by virtue of any statute or rule of law, nor by virtue of anything in Article Thirteenth standing alone, but by virtue of the express language of Article Fourth, which so provides and incorporates by reference Article Thirteenth. 6 Page, Wills (Bowe-Parker Rev. 1962) § 50.14, p. 91.

The words "shall be added to my residuary estate to be disposed of pursuant to the provisions of Article Thirteenth" constituted an adequate dispositive provision for at least two independent reasons.

First, it is not necessary to use the words "give, devise and bequeath" or any other classic verbal formula to accomplish an effective testamentary gift. All that is required, and it certainly existed here, is a clear expression of the testator's dispositive intent. See cases such as *Angus* v. *Noble,* 73 Conn. 56, 64, 46 A. 278; *Beardsley* v. *Merry,* 136 Conn. 573, 575, 72 A.2d 829; *Dennen* v. *Searle,* 149 Conn. 126, 132, 176 A.2d 561. Second, the incorporation by reference did carry into Article Fourth, and thereby made part of Article Fourth, the provisions of Article Thirteenth which defined, and in great detail disposed of, the residuary estate and which did contain the classic phrase "I give, devise and bequeath". It was wholly unnecessary for the testator to repeat, verbatim, in the alternative provision of Article Fourth, the lengthy provisions of Article Thirteenth. To incorporate them by reference was not only equally effective but was preferable draftsmanship.

Primarily, the residuum in this will is for the benefit of the members of the family of the testator and his descendants. This is obviously not true of the "balance" described in Article Twelfth. The primary gift to the Foundation constitutes two-thirds of the "balance of my estate", which is a fund, entirely different from the residuum, computed and composed according to the formula set forth in Article Twelfth.

It is estimated that the Foundation's primary gift of two-thirds of the "balance" will amount to about $15,000,000, while the entire residuum will amount to about $5,000,000. The very fact that the testator went to the trouble of establishing this special formula "balance" makes it clear that he treated it as entirely different, as in fact it was, from the residue established under Article Thirteenth.

Both the Foundation and the other defendants place considerable reliance on the case of *First National Bank & Trust Co.* v. *Baker,* 124 Conn. 577, 588, 1 A.2d 283. Although the will in that case, as in this, contained a preresiduary trust fund, the *Baker* case was concerned, in relevant part, with a deficiency in assets needed to satisfy all particular gifts. We are concerned with no such problem here. But we find nothing in the *Baker* case inconsistent with the result which we reach in this case. Furthermore, precedents are generally inconclusive in will construction suits, at least unless they lay down general rules for the construction of wills, since in each will the language used by the testator, and the circumstances surrounding him, differ. "In each case, it is the intention expressed by the particular language employed which must be construed." *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 281, 170 A.2d 130.

In the present case, without resort to precedents construing different, even though somewhat similar, language in portions of other wills, it is clear that the property embraced in Article Fourth is to be excluded, as a "bequest hereinbefore made", from the formula "balance" established in Article Twelfth.

## II

Another exclusion to be made in computing the formula "balance" in Article Twelfth consists of the "administration expenses".

The Foundation claims that the phrase "administration expenses" should not be accorded its primary meaning but should be construed as including only those administration expenses which the executors, pursuant to the authority conferred upon them in Article Twentieth, decide to pay out of prin-

cipal. As a matter of fact the executors have tentatively decided to pay out of principal approximately one-half of the total administration expenses.

We find no merit in the Foundation's claim. There is no justification for changing the clear wording and primary meaning of the phrase "administration expenses" in Article Twelfth to read "such administration expenses as the executors decide to pay out of principal". The phrase "administration expenses" clearly includes, in its ordinary and primary meaning, all administration expenses properly allowed in the executors' accounting to the court regardless of whether the executors, pursuant to authority conferred on them in Article Twentieth, pay those expenses from principal or income. See cases such as *First National Bank & Trust Co.* v. *Baker,* supra, 587; *Burnham* v. *Hayford,* 141 Conn. 96, 103, 104 A.2d 217; see also 4 Page, Wills (Bowe-Parker Rev. 1961) § 30.21, p. 138. The function of this court is to construe the language used by the testator and thus to ascertain, and give effect to, his expressed intent. We have no power to change that language or to rewrite his will. See cases such as *First New Haven National Bank* v. *First New Haven National Bank,* 153 Conn. 490, 496, 217 A.2d 710; *Griswold* v. *First National Bank,* 134 Conn. 410, 414, 415, 58 A.2d 256.

### III

The questions upon which our advice is desired are:

"(a)  Are the real property and tangible personal property referred to in Article Fourth, or the proceeds thereof, included in the phrase 'bequests hereinbefore made' in Article Twelfth?

"(b)  Should the value of the real property and

tangible personal property referred to in Article Fourth be included in computing the 'balance' of Testator's estate referred to in Article Twelfth, a portion equal to two-thirds ($\frac{2}{3}$) of which is bequeathed to The Teagle Foundation, Incorporated?

"(c) In arriving at the 'balance' of Testator's estate referred to in Article Twelfth, a portion equal to two-thirds ($\frac{2}{3}$) of which is bequeathed to The Teagle Foundation, Incorporated, should there be deducted only those administration expenses which the Executors actually charge to and pay from the principal of the estate as allowed in the judicial accountings of the Executors?

"(d) If the answer to question (c) is 'no', in arriving at the 'balance' of Testator's estate referred to in Article Twelfth, should there be deducted all administration expenses however charged or paid as allowed in the judicial accountings of the Executors?"

Our answer to questions (a) and (d) is "Yes" and to questions (b) and (c) is "No."

In this opinion the other judges concurred.