85 Cal.App.3d 219 (1978)
149 Cal. Rptr. 331
Estate of MARJORIE DUNNE LINDNER, Deceased.
HELEN CULLINAN, Petitioner and Respondent,
v.
LYNNE DUNNE et al., as Executors, etc., Objectors and Appellants.
Docket No. 42317.
Court of Appeals of California, First District, Division One.
September 29, 1978.
*221 COUNSEL
Arthur B. Dunne for Objectors and Appellants.
Cullinan, Burns & Helmer and Vincent Cullinan for Petitioner and Respondent.
OPINION
RACANELLI, P.J.
This appeal presents a question of construction concerning the intended meaning of a testamentary direction that all specific bequests be exonerated from payment of death taxes, shifting liability therefor to the remaining estate. Upon examination of the limited record, we conclude that the trial court properly interpreted the provisions of the tax-relief clause to include gifts of specified interests in real property made under the provisions of paragraph FOURTH of the will. For the reasons which follow, we affirm the order below.

Facts
The underlying facts are essentially undisputed: Marjorie Dunne Lindner died testate on May 19, 1976, having executed a formal will on April 29, 1971; the will was drafted by an attorney, decedent's brother. Under the terms of the will, whose relevant provisions are reported in the margin,[1] a gift of improved real property was made to respondent in trust with the life income proportionately payable to respondent and Walter Anthony, a Paulist Father. The trust is to terminate on respondent's death with the corpus being gifted to Father Anthony conditioned on his survivorship, failing which it passes into the residuary estate created *222 under paragraph SIXTH.[2] Paragraph FIFTH, the tax-relief clause, reads as follows: "FIFTH: All the specific bequests above made are to be net and free of responsibility for inheritance or estate taxes which shall be paid from the remainder of my estate."
Appellants contend that decedent's use of the term "devise" in the fourth paragraph clearly signifies a testamentary transfer of an interest in real property, which both by nature and by definition is excluded from consideration under the provisions of the fifth paragraph expressly restricted to "specific bequests," a testamentary term of devolution traditionally confined to personal property interests only. Relying on a rudimentary principle of construction, appellants argue that the use of such "technical words in a will are to be taken in their technical sense ..." (Prob. Code, § 106),[3] particularly where, as here, the will has been drafted by an experienced and able lawyer. (See Estate of Carter (1956) 47 Cal.2d 200, 205 [302 P.2d 301].) Thus, it is reasoned, only the specific gifts or "bequests" of personal property provided under the third paragraph are immunized from the normal consequences of proportionate federal estate tax liability and state succession tax imposed by statute.
Respondent petitioned the court on behalf of herself and Father Anthony for an order instructing the executors that the gifts under paragraph FOURTH were to be treated tax free within the meaning of the provisions of the succeeding paragraph. Over objection, the court admitted a letter (addressed to respondent) and enclosure prepared by decedent shortly before the will was executed. The enclosure, entitled "Tentative Draft of Trust Fund for Benefit of Mrs. Eustace [Helen] Cullinan Jr. and Walter Anthony," proposed establishment of a living trust funded by real property, income for life payable in (similar) *223 designated proportions to respondent and Father Anthony,[4] the trust terminating on the death of either beneficiary with the corpus and accumulated income passing to the survivor. The beginning paragraph of the draft proposal states: "(Just how this Trust will be set up depends upon the tax situation. In any event, the taxes will not be not be [sic] the responsibility of the beneficiaries.)"
Following entry of an order construing the tax relief provisions in favor of respondent, this appeal ensued.

I.
(1) Generally, state inheritance taxes are payable either out of a beneficiary's share of the estate or from the corpus itself where a life estate and remainder over or contingent transfer is involved (Rev. & Tax. Code, §§ 14121-14125); further, any payment of federal taxes must be equitably prorated among those beneficially interested in the estate except "where a testator otherwise directs in his will ..." (§ 970) in clear and unambiguous language. (Estate of Armstrong (1961) 56 Cal.2d 796, 802 [17 Cal. Rptr. 138, 366 P.2d 490].) No specific language is required so long as the testator clearly expresses his intention not to prorate (estate) taxes. (Estate of Dark (1974) 38 Cal. App.3d 890, 893 [113 Cal. Rptr. 727].) And where the testator clearly directs that a bequest be paid to a beneficiary free of liability for payment of death taxes, absent further direction the burden shifts to the estate itself. (Estate of Hendricks (1970) 11 Cal. App.3d 204, 207 [89 Cal. Rptr. 748]; Estate of McLaughlin (1966) 243 Cal. App.2d 516, 521 [52 Cal. Rptr. 543]; see also 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, §§ 458-459, pp. 5897-5898.)
It is undisputed that the language of the fifth paragraph clearly manifests an intention to relieve all specific bequests from any liability for death taxes, expressly directing that they be paid from the remaining or residuary estate. The sole issue to be determined is whether the gifts under paragraph FOURTH were intended to be included within the class of "specific bequests" in the succeeding paragraph. We are of the opinion that they were.

II.
(2) Preliminarily, we observe that the nature of beneficial interest received by respondent under the fourth paragraph (a life income) *224 constitutes a (demonstrative) legacy (§ 161, subd. (2)), a testamentary term frequently used interchangeably with the term "bequest" in describing gifts of personal property in general.[5] (See Estate of Platt (1942) 21 Cal.2d 343 [131 P.2d 825]; Estate of Gracey (1927) 200 Cal. 482 [253 P. 921]; Cal. Will Drafting (Cont.Ed.Bar 1965) § 11.3, p. 356.) Earlier cases demonstrate a generic equivalence in meaning among the terms legacy, bequest and devise, when necessary to carry out the testator's overall intent. (See Estate of Bernal (1913) 165 Cal. 223 [131 P. 375]; Childs v. Gross (1940) 41 Cal. App.2d 680 [107 P.2d 424].) On this basis alone, the trial court correctly concluded that the income gift to respondent was exonerated from payment of taxes under the provisions of the fifth paragraph.
But there is a more fundamental and independent basis of our decision to affirm which we discuss below.

III.
(3) In each of the principal dispositive provisions, the will employs the ordinary and broad donative term give conjunctively and interchangeably with the technical terms bequeath and devise.[6] The generally accepted definition acquired through common usage of the verb give means "to confer ... ownership... [or] to assign the future ownership of by will" (Webster's Third New Internat. Dict.); "to transfer ownership or possession..." (Black's Law Dict. (4th rev. ed.). Additionally, in providing for certain contingent gifts, less formal expressions are likewise used to denote transfers of beneficial interests.[7] The use of such general and unrestricted expressions of donation, together with such technical terms, creates a facial uncertainty as to whether the decedent intended the latter to be mechanically interpreted within the meaning of the provisions governing tax relief. Further ambiguity appears in the juxtaposition and descriptive language of the key paragraphs themselves: (1) the tax-relief clause follows immediately after the fourth paragraph *225 rather than the third to which appellants argue it is singularly restricted; (2) paragraph FIFTH expressly applies to "all the specific bequests above made," (italics added) directory language which under appellants' theory would be rendered mere surplusage, a concept repugnant to basic principles of construction. (§ 102; Estate of Newmark (1977) 67 Cal. App.3d 350, 356 [136 Cal. Rptr. 628].)
It has been repeatedly stated that: "The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible." (Estate of Wilson (1920) 184 Cal. 63, 66-67 [193 P. 581].) The rule is imbedded in the Probate Code. (§ 101.[8]) "Its objective is to ascertain what the testator meant by the language he used." (Estate of Russell (1968) 69 Cal.2d 200, 205-206 [70 Cal. Rptr. 561, 444 P.2d 353], and cases there cited.)[9]
When uncertainty arises upon the face of the will itself as to its meaning, the intent must be ascertained from the words used and the circumstances surrounding execution of the will. (Estate of Russell, supra, 69 Cal.2d 200, 206.) When the language used is uncertain or ambiguous, extrinsic evidence may be considered in order to ascertain the testamentary intention. (Ibid. at p. 206.) Such extrinsic evidence is admissible both to show that ambiguity exists and to resolve the ambiguity. (Estate of Taff (1976) 63 Cal. App.3d 319, 324-325 [133 Cal. Rptr. 737] [extrinsic evidence admissible to show and resolve ambiguity in the use of the descriptive term "heirs"]; see also Estate of Flint (1972) 25 Cal. App.3d 945, 954 [102 Cal. Rptr. 345].) Although we recognize that a reasonable factual determination based upon extrinsic evidence may not be disturbed on appeal (Estate of Black (1962) 211 Cal. App.2d 75, 84 [27 Cal. Rptr. 418]), when such evidence is uncontroverted and presents no issue of credibility, it is the duty of the reviewing court to independently interpret the written instrument itself. (Estate of Dodge (1971) 6 Cal.3d 311, 318 [98 Cal. Rptr. 801, 491 P.2d 385]; Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861 [44 Cal. Rptr. 767, 402 P.2d 839]; 53 Cal.Jur.2d, Wills, § 373, p. 647.) In discharging that duty we are governed by established rules of testamentary construction: "The presumption of a technical meaning *226 established by section 106 is subordinate to the dominant purpose of finding and effecting the testator's intent (Estate of Kruger (1942) 55 Cal. App.2d 619, 622 ...; see Estate of Marin (1945) 69 Cal. App.2d 147, 150 ...); it is an aid to be used in ascertaining that intent, not a tool by which the court frustrates the testator's objectives. [¶] The testator's intent cannot be garnered from the technical meaning of one phrase, but only from the will as a whole (see Estate of Williams (1952) 113 Cal. App.2d 895, 897 ...; Estate of Marin (1945) 69 Cal. App.2d 147, 150 ...), and this will must be examined `in the light of the circumstances surrounding its execution so as to ascertain what the parties meant by the words used.' (Estate of Russell (1968) 69 Cal.2d 200, 208-209....)" (Estate of Dodge, supra, 6 Cal.3d 311, 324-325.) Of course, that examination must focus on the intention of the testator and not the testator's lawyer. (Id., at p. 324, fn. 13; cf. Estate of Gansner (1963) 222 Cal. App.2d 390, 393 [35 Cal. Rptr. 213].)
Under the circumstances revealed in the record, decedent's letter and enclosed proposal  written in close proximity to the date of execution of the will  were properly admitted as evidence tending to disclose ambiguity in the words used and to aid in its resolution. (Estate of Russell, supra, 69 Cal.2d 200, 206-209.) Read together, the documents unmistakably reflected a proposed inter vivos transfer to the same beneficiaries under substantially similar terms and conditions as contained in paragraph FOURTH of the will, including the expressed intention to provide relief from attendant tax consequences. To submit to the purely technical interpretation urged by appellants would result in partially frustrating decedent's intended objective that all of the previously described gifts be relieved of liability for payment of death taxes otherwise directed to be paid from the assets of the remainder estate.
While we have found no California decision squarely in point, respondent has directed our attention to a factually parallel case in another jurisdiction which we may profitably consult. (Estate of Salisbury (1978) 76 Cal. App.3d 635, 642 [143 Cal. Rptr. 81].) In Mott v. Teagle Foundation, Inc. (1968) 156 Conn. 407 [242 A.2d 739], the court was confronted with a similar issue of testamentary construction involving a gift of valuable real property in relation to a subsequent provision excluding "bequests hereinbefore made" (in computing a percentage of the remaining estate left to a charity). Article FOURTH of the will, in pertinent part, provided: "I give, devise and bequeath [two described hunting preserves]...." In holding that the real property given under *227 that provision was included within the subsequent phrase "bequests hereinbefore made" (article TWELFTH), the Mott court reasoned that it was unnecessary "to use the words `give, devise and bequeath' or any other classic verbal formula to accomplish an effective testamentary gift ..." so long as the testator's dispositive intent was clearly expressed. (156 Conn. at p. 413 [242 A.2d at p. 742].) Similarly, the sense of the language under review, in light of the undisputed evidence, clearly manifests decedent's dominant purpose to make specific tax-free gifts overriding any contrary implication derived solely from the use of technical terminology. (Estate of Dodge, supra, 6 Cal.3d 311; § 106.)
The order from which the appeal is taken is affirmed.
Newsom, J., and Sweeney, J.,[*] concurred.
NOTES
[1] The will provides in pertinent part:

"THIRD: I give and bequeath, ... [subparagraphs (a) through (n) enumerate specific gifts of cash, jewelry and personal artifacts]. If any of said gifts lapse the subject thereof shall go as part of the residue ... [under paragraph SIXTH]."
"FOURTH: The improved real property ... known as 325, 327, 329 Lombard Street, ... I give and devise as follows:
"(1) To HELEN CULLINAN as trustee, in trust, to pay the income, after establishing such reserves for insurance, taxes, repairs and other purposes as she in her discretion may determine upon, as follows:
"(a) During the life of HELEN CULLINAN and WALTER ANTHONY, two-thirds to HELEN CULLINAN herself and one third to WALTER ANTHONY.
"(b) If WALTER ANTHONY should predecease HELEN CULLINAN all of the income shall go to HELEN CULLINAN for the remainder of her life.
"(2) On the death of HELEN CULLINAN said trust shall cease and determine and the corpus of said trust shall go and I hereby give and devise it as follows:
"(a) To WALTER ANTHONY if he is then alive.
"(b) If WALTER ANTHONY is not then alive, then as provided in provision SIXTH hereof.
"(3) The said trustee, HELEN CULLINAN, has power to sell the trust property, at public or private sale, with or without notice, the proceeds to be held in trust in place of said real property, provided that during the life of WALTER ANTHONY, this shall be done only with his consent. Investment of the proceeds shall not be restricted to things in which by law investment otherwise might be restricted."
[2] One of the coexecutors (and the other nephews) receives an equal one-fourth share in the residuary estate and title to the remaining one-fourth interest as trustee of a spendthrift trust for the benefit of decedent's niece.
[3] Except as otherwise indicated, all statutory references are to the Probate Code.
[4] Decedent's letter initially suggested a possible reservation of income during her life; but no mention thereof is made in the draft proposal.
[5] Indeed, in their verified answer to the petition, appellants and their attorney employ the terms "legatees" and "devisees" interchangeably. (Cf. In re McGovern's Estate (1926) 77 Mont. 182 [250 P. 812]; Stubbs v. Abel (1925) 114 Ore. 610 [233 P. 852].)
[6] The following are illustrative: "THIRD: I give and bequeath"; "FOURTH: ... I give and devise..."; "SIXTH: ... I hereby give, devise and bequeath...." (Italics added.)
[7] For example: "... the income shall go. ..." (Par. 4, subd. (1)(b).) "... the corpus of said trust shall go ...." (Par. 4, subd. (2).) "... shall go to said issue...." (Par. 6, subd. (3).) "... corpus ... shall go to her issue... [or] ... go to my nephews...." (Par. 6, subd. (4)(j).) (Italics added.)
[8] Section 101 provides in pertinent part: "... A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible."
[9] Contrary to appellants' contention, the holding in Estate of Salmonski (1951) 38 Cal.2d 199 [238 P.2d 966], lends no support to their argument. Not only is Salmonski factually distinguishable, but it accords with the general rule that in the final analysis it is the testator's expressed purpose that governs. (Id., at p. 213.)
[*] Assigned by the Chairperson of the Judicial Council.