******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# REUBEN KABEL *v.* BETH ROSEN, EXECUTRIX (ESTATE OF MARCIA CHAMBERS), ET AL.
## (AC 44604)

Moll, Cradle and Clark, Js.

*Syllabus*

The plaintiff, the nephew of the decedent, appealed from the judgment of the trial court rendered in favor of the defendant R, in her capacity as executrix of the estate of the decedent. The decedent left a detailed, unambiguous will in which she made specific monetary bequests to various individuals and entities. She also directed that R sell her real property and divide the net proceeds among certain of the defendants, namely, her surviving stepsons, S and W, and H, the wife of her deceased stepson. The decedent further specified that 10 percent of her residuary estate should go to the plaintiff and that the remainder should go to S, W, H, and their defendant children in varying percentages. The estate had insufficient funds to satisfy the specific monetary bequests and administrative costs, and, accordingly, the residual beneficiaries, including the plaintiff, did not receive residuary distributions. The decedent had an individual retirement account valued at more than $2 million that did not pass through the will because it named S, W, and H as designated beneficiaries. The plaintiff commenced this action, alleging that the decedent had mistakenly believed that the retirement account was a probate asset subject to distribution under her will, that she had relied on such mistaken assumption in making the numerous bequests in her will, and that the plaintiff was damaged by her mistaken belief. He argued that the provision of the will that provided for the distribution of the net proceeds from the sale of the decedent's real property should be subject to equitable abatement to fund his claim for monetary damages. On the plaintiff's appeal to this court, *held* that the trial court did not err in refusing to consider the plaintiff's request for an equitable remedy: the court did not err in failing to adhere to its prior denial of a motion to strike the plaintiff's complaint filed by S, W, and H because, under the law of the case doctrine, the court's interlocutory order denying the motion to strike did not bind the court in its ultimate adjudication of the plaintiff's claim on the merits, and the fact that the same judge ruled on the motion to strike and conducted the trial did not render the court's denial of the motion any more binding; moreover, the plaintiff's contention that the trial court should have considered intrinsic evidence within the will pointing to the decedent's intent failed, as the will did not reference the retirement account, the plaintiff failed to identify or explain with any specificity the alleged intrinsic evidence, and the plaintiff's argument that provisions in the will establishing residuary beneficiaries constituted intrinsic evidence because the decedent would not have constructed the will with such provisions if she did not believe that the retirement account was a part of her probate estate was akin to the argument that our Supreme Court rejected in *DiSesa* v. *Hickey* (160 Conn. 250); furthermore, the plaintiff's argument that the trial court erred in failing to consider extrinsic evidence when assessing the intent of the decedent was unavailing because the evidence that the plaintiff relied on, namely, the testimony of the attorney who drafted the will, did not support the plaintiff's contention that such attorney had stated that the decedent held the mistaken belief that the will would control the disposition of her retirement account; additionally, the equitable remedy of reformation requested by the plaintiff was unavailable as a matter of law and this court declined to recognize it because our appellate courts repeatedly have refused to recognize reformation of a will as a remedy and the defendant failed to provide any Connecticut case law to the contrary.

Argued February 3—officially released October 4, 2022

*Procedural History*

Action, inter alia, seeking to enjoin the distribution

of the net proceeds of the sale of a decedent's real property in accordance with her will, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *S. Richards, J.*; judgment for the named defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Joseph A. Hourihan*, for the appellant (plaintiff).

*Scott T. Garosshen*, with whom was *Brendon P. Levesque*, for the appellee (named defendant).

*Opinion*

MOLL, J. The plaintiff, Reuben Kabel, appeals from the judgment of the trial court, rendered following a bench trial, in favor of the defendant Beth Rosen, in her capacity as executrix of the estate of the decedent, Marcia Chambers, who was the plaintiff's aunt.[1] On appeal, the plaintiff claims that the court erred in failing to consider his request for an equitable remedy (i.e., "to alter the disposition of property under the distribution plan set forth under the decedent's will") that effectively would have resulted in the reformation of the decedent's unambiguous will, which he claims was necessary in light of a mistake that he alleges she made concerning whether a particular individual retirement account would be included in her residuary estate. We conclude that the court did not err in refusing to consider the plaintiff's request for an equitable remedy in the form of reformation of an unambiguous will, a remedy that has never been recognized in Connecticut. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The decedent died on July 13, 2018. The decedent left a detailed will dated March 23, 2018, in which she nominated and appointed the defendant as the executrix of the will. The will was admitted to probate, and the Probate Court for the district of Branford-North Branford appointed the defendant as the executrix of the will. The will made several specific monetary bequests, including to (1) the decedent's stepchildren and their families, (2) her housekeepers and various friends, (3) the New Haven Independent, and (4) her deceased husband's alma mater, Yale Law School. The decedent directed that the defendant sell her real property—her home at 100 Clark Avenue in Branford—"on such terms as [the defendant], in [the defendant's] sole discretion, shall determine," and divide the net proceeds three ways among her two surviving stepsons and the wife of her deceased third stepson. Additionally, she left a piano to a friend and the "remainder of [her] tangible personal effects, (excluding money and securities of any kind) any automobile or automobiles which may be in [her] name at the time of [her] death, all of [her] household furniture and furnishing, and all other tangible personal property owned by [her] at the time of [her] death" to be divided, in as nearly equal shares as practicable, among the issue of her deceased husband, per stirpes, and the plaintiff. The decedent also specified that her residuary estate, "[a]ll the rest, residue and remainder of [her] property and estate, real, personal or mixed," should be divided in the following manner: 15 percent to each of her two surviving stepsons and to the wife of her deceased third stepson, 10 percent to the plaintiff, 10 percent to each of the two children of her deceased stepson, and 5 percent to each of the five children of her surviving

stepsons.

On or about November 9, 2018, the defendant filed an initial inventory of the estate's assets. On April 25, 2019, the defendant filed an updated inventory, which valued the estate at $682,230.63. On May 23, 2019, the defendant completed a pro forma form 706,[2] which provided that the estate had $62,816.57 in funeral expenses and expenses incurred in administering property subject to claims. The form also showed a Fidelity Individual Retirement Account (IRA) valued at $2,127,023.47 on the date of the decedent's death. Because that IRA had designated beneficiaries, however, it did not pass through the will. The plaintiff was not a named beneficiary of the IRA. The estate had insufficient assets to fully satisfy the specific monetary bequests and administrative costs; therefore, the residual beneficiaries, including the plaintiff, did not receive a residuary distribution.

On June 7, 2019, the plaintiff commenced this action. The plaintiff alleged that the decedent mistakenly believed that the IRA was a probate asset subject to distribution under her will and that she relied on this mistaken assumption in "includ[ing] the numerous bequests and devise in her will." Accordingly, the plaintiff claimed that "he ha[d] been damaged by [the decedent's mistaken belief] as to [the IRA] not being a probate asset to the value of ten percent of the value of said retirement account at the time of [her] death" and argued that article VII of the will, which provided for the distribution of the net proceeds from the sale of the decedent's real property, should be subject to equitable abatement in order to fund the plaintiff's claim for monetary damages.[3] The beneficiaries of the net proceeds from the sale of the decedent's home were the same individuals designated as the beneficiaries of the IRA.

The matter was tried to the trial court, *S. Richards, J.*, on November 10, 2020. Following trial, the court issued its memorandum of decision rendering judgment in favor of the defendant. The court first determined that the key question raised by the plaintiff's claims was whether, in the absence of "any obvious ambiguity in [the decedent's] will, extrinsic evidence presented could defeat [the decedent's] bequest to [the plaintiff] if a mistake in [the decedent's] understanding about the nature of the IRA bequest was established." The court then held "that extrinsic evidence cannot be considered under the circumstances alleged by [the plaintiff]. Under our general rules of law . . . the court is not permitted to read ambiguity into the four corners of [the decedent's] will where there is none nor consider extrinsic evidence relating to allegations by [the plaintiff] concerning scrivener's errors on the part of [the decedent's attorney] in drafting [the decedent's] will or [the decedent's] supposed misunderstanding about her IRA bequest in the will." As to the plaintiff's requested

equitable remedy, the court added: "In light of this conclusion, the court finds that it is unnecessary to address the equitable remedy that [the plaintiff] presented to the court for disposition." This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff does *not* challenge—and we leave undisturbed—the court's conclusion that the decedent's will is unambiguous.[4] The plaintiff claims, instead, that, notwithstanding the lack of any ambiguity in the decedent's will, the court erred in failing to consider his requested equitable remedy, which would effectively require reformation of the decedent's will and which he claims was necessary in light of the decedent's purported misunderstanding regarding how the IRA would be disposed of on her death. In support of this claim, the plaintiff's contentions distill to whether the trial court failed: (1) to apply the law of the case doctrine, (2) to consider intrinsic evidence to determine the decedent's intent, and (3) to consider extrinsic evidence to determine the decedent's intent. We address, and reject, each of these contentions and conclude that the plaintiff's claim suffers from a more fundamental, and indeed fatal, flaw, namely, that equitable reformation of the decedent's unambiguous will is not an available remedy as a matter of law.

I

Relying on the law of the case doctrine, the plaintiff first contends that the court erred in failing to adhere to the court's prior denial of the motion to strike the plaintiff's complaint filed by the defendants Steven Wheeler, Warren C. Wheeler, and Haynie Wheeler (movants). This contention warrants little discussion.

"The application of the law of the case doctrine involves a question of law, over which our review is plenary. . . . The law of the case doctrine expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . [When] a matter has previously been ruled [on] interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if . . . [a judge] becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Citations omitted; internal quotation marks omitted.) *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 322, 63 A.3d 896 (2013); see also *Breen* v. *Phelps*, 186 Conn. 86, 98–99, 439 A.2d 1066 (1982) ("A judge is not bound to follow the decisions of another judge made at an earlier stage of the

proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Citations omitted; internal quotation marks omitted.)).

Here, the movants argued in their motion to strike that the complaint should be stricken because it failed to allege facts that would excuse the plaintiff's failure to file in a timely manner an appeal from the Probate Court's admission of the will. Citing *Folwell* v. *Howell*, 117 Conn. 565, 169 A. 199 (1933), inter alia, the plaintiff objected to the motion on the basis that the complaint was "seeking equitable relief from the effect of the admission of the will . . . ."[5] In denying the motion to strike, the court stated that it "agree[d] with the plaintiff's position and the authority cited in its objection." The plaintiff claims that the judgment of the court rendered after trial must be reversed because the court improperly "changed its mind" concerning the availability of the requested equitable relief.

Applying the well settled principles governing the law of the case doctrine, we conclude that the court's interlocutory order denying the motion to strike did not bind the court in its ultimate adjudication of the plaintiff's claim on the merits. Even assuming that the same legal issue was raised at trial, the court had the "right to reconsider the question . . . ." *Breen* v. *Phelps*, supra, 186 Conn. 98. The fact that the same judge ruled on the motion to strike and conducted the trial in this matter does not render the court's denial of the motion to strike any more binding.

## II

We next address the plaintiff's contention that the trial court should have considered "intrinsic evidence within the will" pointing to the decedent's intent. This contention fails.

We find helpful to our analysis, in an analogous context, our Supreme Court's decision in *DiSesa* v. *Hickey*, 160 Conn. 250, 278 A.2d 785 (1971). In *DiSesa*, the widow of a testator and grantor of an inter vivos trust (decedent) appealed from a judgment construing the decedent's will and determining the effect of the dispositive provisions of the trust. Id., 256–57. The trial court had concluded, inter alia, that the trust property should be distributed under the will, despite the will making no reference to the trust agreement nor to the power of appointment reserved in the trust agreement to the decedent. Id., 254, 257. The court reasoned that "[t]he power of appointment reserved [by the decedent in the trust] was exercised by the will as a whole, read in the light of all the surrounding circumstances."[6] Id., 257.

On appeal, our Supreme Court reversed the judgment,

stating: "The appellees place much reliance upon the circumstance that unless the will were construed to be an exercise of the power of appointment there were not sufficient assets in his estate to accomplish in full the objectives of his will providing for specific bequests with a residue to a favored niece." Id., 261. The court rejected that contention, reasoning that "at the time the will was executed [the decedent] had full and complete power to withdraw from the trust any part or all of the principal and had the right to exercise this power right up until the time of his death. He was thus in a position at any time before his death to change the size of the estate which would pass by the terms of his will and thus the ultimate disposition of it by withdrawing from the trust principal which would pass by his will or refraining from such withdrawal and leaving the entire principal to be distributed under the default provisions of the trust."[7] Id. Accordingly, the court held that the trial court erred in concluding that the will exercised the decedent's power of appointment. Id., 261–62.

Here, the will similarly makes no reference to the IRA. Although the plaintiff asserts that there is intrinsic evidence within the will to contradict the disposition of the decedent's property, he fails to identify or explain with any specificity this alleged intrinsic evidence. He does cite, however, to articles VII and VIII of the will, which set out the decedent's devise of real property to her two surviving stepsons and the wife of her deceased third stepson, and her residuary estate, respectively. He thus appears to be claiming that articles VII and VIII of the will constitute intrinsic evidence of the decedent's intention to have the IRA pass under the will because she would not have constructed the will with various residuary beneficiaries if she did not believe that the IRA was part of her probate estate. This is akin to the argument that our Supreme Court rejected in *DiSesa*. See id., 261. We similarly reject the plaintiff's contention that there is intrinsic evidence within the will to alter the unambiguous disposition of the decedent's property.

### III

The plaintiff also contends that the court erred in failing to consider extrinsic evidence when assessing the intent of the decedent. We discern no error.

In support of this contention, the plaintiff makes the following representation in his principal appellate brief: "Attorney Barbara Green, who represented [the decedent] and prepared her will, testified that when she made [the decedent's] will, [the decedent] held the mistaken belief that the will would control the disposition of her IRA . . . ." He cites in support thereof the following excerpt from the trial transcript, reflecting a colloquy between the plaintiff's counsel and Green:

"Q. Okay. And when the . . . March 23, 2018 will

was drafted and executed, was there any contrary understanding that is different from the understanding that you had when this letter was written as to the ownership of that [IRA]?

"A. Well, we didn't discuss the—we didn't discuss her—her assets on the date that she executed the will. So, I'm—

"Q. At any time between March 24, 2016, and—and the day of the execution of the will, which was February—March 23, 2018, almost two years to the day, was there ever any discussion that indicated any understanding by [the decedent] that this account was anything but an account that she owned individually and controlled?

"A. Not that I recall.

"Q. Was there any discussion with her in any way indicating that this account was not gonna be controlled by her will?

"A. Not that I recall."

This excerpt simply does not support the premise of the plaintiff's contention that the trial court failed to consider this purported extrinsic evidence of the decedent's intent to have the IRA pass under the residual clause of the will.[8] Thus, the plaintiff's argument is unavailing.

IV

Finally, we address the fatal flaw in the plaintiff's requested equitable remedy. As stated previously, the remedy sought by the plaintiff was to have the court alter the distribution of net proceeds from the sale of the decedent's real property—from which the plaintiff would otherwise not benefit—in a manner that would give the plaintiff the monetary amount he would have received had the IRA passed under the residue clause of the will. Although the court found it "unnecessary to address the equitable remedy that [the plaintiff] presented to the court for disposition," we conclude that such a remedy is unavailable as a matter of law.

Whether the trial court had the power to order a reformation of the will "is a question involving the scope of the trial court's inherent powers and, as such, is a question of law. . . . Accordingly, our review is plenary." (Citation omitted.) *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 239–40, 796 A.2d 1164 (2002).

Our Supreme Court, interpreting a prior version of the Statute of Wills, now codified as General Statutes § 45a-251,[9] explained: "The statute is not only directory but also prohibitive and exhaustive. It permits one to make provision by will for the disposition of his property after death, that is, by bequest or devise, upon complying with the conditions prescribed in the statute

and not otherwise, and one condition is that each bequest shall be contained in a writing executed with the prescribed formalities. . . . We are limited to the language used. We may construe a will, but we are powerless to reconstruct one." (Citation omitted.) *Smuda* v. *Smuda*, 153 Conn. 430, 432, 217 A.2d 59 (1966).

Accordingly, our appellate courts steadfastly have refused to recognize equitable reformation of a will as a remedy. Id.; see also *Mott* v. *Teagle Foundation, Inc.*, 156 Conn. 407, 415, 242 A.2d 739 (1968) ("The function of this court is to construe the language used by the testator and thus to ascertain, and give effect to, his expressed intent. We have no power to change that language or to rewrite his will."); *Carr* v. *Huber*, 18 Conn. App. 150, 156, 557 A.2d 548 (1989) ("the court may not modify a will by construction in order to make it conform to its own opinion as to a more equitable distribution").

Here, the plaintiff does not argue that the language of the decedent's will is ambiguous. Rather, the plaintiff contends that this "is an appeal in equity to the court to alter the disposition of property under the distribution plan set forth under the decedent's will." The plaintiff relies on, among other cases, *Folwell* v. *Howell*, supra, 117 Conn. 565, to support his contention that equitable reformation of the testator's will is appropriate. That reliance is misplaced. In *Folwell*, our Supreme Court concluded that the plaintiffs "sufficiently allege[d] that the will was procured by the defendants by means of such fraud, imposition and undue influence as would have constituted a good defense against the application for its admission to probate," and thus allowed the plaintiffs to bring a late challenge to the admission of the will. Id., 570. Here, the plaintiff did not request that the court allow him to bring a late challenge to the admission of the will to probate. Rather, he requested that one of the provisions of the decedent's will be altered in order to fund his claim for monetary damages. Furthermore, the plaintiff has not pointed this court to any existing case law in which a Connecticut court ordered the equitable reformation of a will and, given the bevy of Connecticut cases in which the court refused to equitably reform or reconstruct a will; *Mott* v. *Teagle Foundation, Inc.*, supra, 156 Conn. 415; *Smuda* v. *Smuda*, supra, 153 Conn. 432; *Carr* v. *Huber*, supra, 18 Conn. App. 156–57; he is asking us to recognize a novel remedy that has been rejected in Connecticut. We decline to recognize such a remedy under these circumstances.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the plaintiff's complaint also named as defendants/interested parties Jeaninne Wheeler, also known as Janine Wheeler, Patricia Wheeler, Gwendolyn Wheeler, Owen Wheeler, Lauren Wheeler, Jeffrey Wheeler, Steven Wheeler, Warren C. Wheeler, Haynie Wheeler, and Emily Wheeler, none

of these parties is participating in this appeal. We therefore refer to Beth Rosen, in her capacity as executrix of the decedent's estate, as the defendant.

[2] A form 706 is a "United States Estate (and Generation-Skipping Transfer) Tax Return."

[3] In addition to money damages, the plaintiff requested (1) "[a]n injunction to enjoin the distribution of the net proceeds of the sale of No. 110 Clark Avenue, Branford, Connecticut, in any manner which does not recognize the claim of the plaintiff" and (2) "[s]uch other relief as to equity may pertain."

[4] The plaintiff states in his principal appellate brief: "[T]here is nothing ambiguous about the language of the will."

[5] We address the plaintiff's reliance on *Folwell* in part IV of this opinion.

[6] The decedent's widow would take the trust estate in the absence of an exercise of the power of appointment. *DiSesa* v. *Hickey*, supra, 160 Conn. 260.

[7] Prior to reaching its holding, the court emphasized: "In Connecticut . . . the common-law rule applies  . . . .  Under this rule, a testator will not be considered as having executed or having intended to execute a testamentary power of appointment unless the will contains a reference to the power itself or to the subject of it, [or] unless the intention to execute [the power] is manifest from the fact that the will would remain inoperative without the aid of the power, or is so clearly demonstrated by words or acts  . . . that the transaction is not fairly susceptible of any other interpretation." (Internal quotation marks omitted.) *DiSesa* v. *Hickey*, supra, 160 Conn. 258.

[8] We note that the court, in support of its refusal to consider extrinsic evidence, relied on *Connecticut Junior Republic* v. *Sharon Hospital*, 188 Conn. 1, 448 A.2d 190 (1982), overruled by *Erickson* v. *Erickson*, 246 Conn. 359, 716 A.2d 92 (1998). In that case, our Supreme Court held that extrinsic evidence of a mistake by a scrivener of a testamentary instrument is not admissible in a proceeding to determine the validity of the testamentary instrument. Id., 2, 9. We acknowledge that, in *Erickson* v. *Erickson*, 246 Conn. 359, 372, 716 A.2d 92 (1998), our Supreme Court overruled its prior holding in *Connecticut Junior Republic* by holding that, "if a scrivener's error has misled the testator into executing a will on the belief that it will be valid notwithstanding the testator's subsequent marriage, extrinsic evidence of that error is admissible to establish the intent of the testator that his or her will be valid notwithstanding the subsequent marriage." Nevertheless, *Erickson* does not affect our decision here because, as our Supreme Court noted in that decision, to invoke the *Erickson* doctrine, "[t]he proponent would have to establish the scrivener's error by clear and convincing evidence." Id., 375. In the present case, the plaintiff did not make such a showing. Furthermore, the plaintiff does not argue on appeal that the court erred in failing to apply *Erickson* to his claim.

[9] General Statutes § 45a-251 provides: "A will or codicil shall not be valid to pass any property unless it is in writing, subscribed by the testator and attested by two witnesses, each of them subscribing in the testator's presence; but any will executed according to the laws of the state or country where it was executed may be admitted to probate in this state and shall be effectual to pass any property of the testator situated in this state."